**The Cardoza Law Corporation**
Michael F. Cardoza, Esq. (SBN: 194065)
Mike.Cardoza@cardozalawcorp.com
Lauren B. Veggian, Esq. (SBN: 309929)
Lauren.Veggian@cardozalawcorp.com
548 Market St., #80594
San Francisco, CA 94104
Telephone:   (415) 488-8041
Facsimile:    (415) 651-9700

Tatar Law Firm, APC
Stephanie Tatar, Esq. (237792)
Stephanie@TheTatarLawFirm.com
3500 West Olive Avenue, Suite 300
Burbank, CA 91505
Telephone: (323) 744-1146
*Attorneys for Plaintiff*,
Ivyshanne Acorin

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IVYSHANNE ACORIN,**<br><br>Plaintiff,<br><br>v.<br><br>**TRANS UNION, LLC,**<br><br>Defendant. | **Case No.:** 3:24-cv-00038-JES-BLM<br><br>**DECLARATION OF STEPHANIE R. TATAR IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF TRANS UNION** |

///

///

1

I, Stephanie R. Tatar, declare:

1.    I am one of plaintiff's counsel in this matter and if called upon to testify to the matters set forth in this application, I could do so truthfully and competently from personal knowledge.

2.    On November 14, 2024, I served a Notice of Deposition of Trans Union's Rule 30(b)(6) witness. Exhibit 1 attached hereto.

3.    The deposition was noticed for January 3, 2025, as Plaintiff had scheduled four other depositions in the related matters throughout December.

4.    I requested that Trans Union's attorneys confirm this date with me no later than November 18, 2024.  See Exhibit 2.

5.    In an effort to streamline the process of choosing dates for all depositions, on November 14, 2024, I created a "Deposition Scheduling Matrix" for all Defendants to input their desired dates for depositions.  See Exhibit 3.

6.    On November 15, 2024, Trans Union indicated on the Matrix that its Rule 30(b)(6) witness would be available on January 8, 2025 for deposition. See Ex. 3.

7.    On Tuesday, November 19, 2024, I served a new Notice of Deposition of Trans Union for January 8, 2025.  See Exhibit 4.

8.    This Notice of Deposition contained 26 topics for examination relevant to Plaintiff's claims against Trans Union and Trans Union's Affirmative Defenses. See Ex. 4.

9.    On December 26, 2025, Trans Union's attorney contacted me via email and informed me that she would need to reschedule the deposition of Trans Union's 30(b)(6) witness because of the witness's family emergency.

10.    I responded to this email on January 2, 2025 (as I was out of the country until January 2) and offered to enter into a stipulation to continue the discovery deadline for a few days for the sole purpose of accommodating the

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

**DECLARATION OF STEPHANIE TATAR IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF TRANS UNION**

witness's family emergency and offered to take the deposition any time in January.

11.     Attorney Singh informed me that a continuance would not be necessary as she had secured another representative, Andrew Montella, to appear at the deposition.

12.     Two days prior to the deposition, on January 6, 2025, Attorney Singh served various objections to the topics for examination identified in the Notice of Deposition.  See Exhibit 5.

13.     Attorney Singh also sent an email to confer regarding her objections to the topics listed in the Notice.  Id.

14.     Though the topics of examination were known to Attorney Singh since November 14, 2024, the first objections or comments I received from Trans Union were sent less than forty-eight hours to the start of this deposition and time did not permit to confer on such short notice.

15.     None of the objections indicated that Trans Union refused to produce a witness to testify.  See Ex. 5.

16.     At no point in time, did Trans Union attempt to obtain a protective order related to the topics of examination for the January 8, 2025 deposition, nor has it done so as of the date of filing this Motion.

17.     During the deposition of Trans Union's 30(b)(6) witness on January 8, 2025, it became clear that Trans Union had not designated and did not secure a witness to testify to all of the topics in the Notice of Depositions.

18.     Specifically, there was no witness to testify to the following topics numbers:

>    10. The costs or expenses incurred by You in conducting each investigation into any dispute made by Plaintiff.

>    13. The names and contact information of all of the fraud and/or identity theft department manager(s), assistants, and other person(s) responsible for creating, reviewing, conducting

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

DECLARATION OF STEPHANIE TATAR IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF TRANS UNION

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

training on, inspecting, and implementing the fraud and identity theft related policies and practices of Defendant.

14. The names and contact information of all of fraud and/or identity theft department manager(s), assistants, and other person(s) responsible for creating, reviewing, conducting training on, inspecting, and implementing the debtor identification and verification policies and practices of Defendant.

15. The names and contact information of all of Defendant's employees and other person(s) who communicated with Plaintiff or anyone posing as Plaintiff, in writing, verbally, or otherwise, regarding the tradelines or accounts at issue.

16. All of the oral and written training provided to employees of Defendant from 2017 through the present regarding Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding fraud/identity theft.

17. All of the oral and written training provided to employees of Defendant from 2017 through the present regarding state and federal laws regarding credit reporting and fraud/identity theft.

23. Any and all complaints and allegations, including, but not limited to, lawsuits, demand letters, Better Business Bureau, State Licensing Agency, Yelp! reviews, Google reviews, any online review forum against Defendant for violation of credit reporting laws and/or fraud and identity theft laws in the preceding 36 months.

24. All lawsuits instituted against You based on alleged violations of the CCRAA Cal. Civ. Code §1785 et seq., and Fair Credit Reporting Act 15 U.S.C. §1681 during the 5 years prior to the filing of the Complaint.

25. All studies, audits, quality control analyses, or other investigations that You conducted regarding the frequency of identity theft disputes over the previous 5 years.

26. All studies, audits, quality control analyses, or other investigations that You conducted regarding the frequency of identity theft disputes involving Wells Fargo, N.A. over the

**DECLARATION OF STEPHANIE TATAR IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF TRANS UNION**

previous 5 years.

19.    Additionally, Mr. Montella also responded "I don't know", referred me other departments for responses and was woefully unprepared to offer testimony regarding the following topics:

> 1.  The factual basis of each affirmative defense that You pled as to Plaintiff's claims.
>
> 2.  All of Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding investigating tradelines when a consumer claims the tradeline is the result of identity theft.
>
> 6.  All communications, written, verbal, or otherwise between Defendant and its staff regarding the tradelines at issue Defendant was reporting or publishing about Plaintiff, including all internal notes, records, and communications.
>
> 7.  All communications, written, verbal, or otherwise, internally within Defendant regarding the investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.
>
> 8.  All communications, written, verbal, or otherwise, between Defendant and any third party, including but not limited to Plaintiff and/or the CRAs, regarding the investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.
>
> 9.  All information regarding Defendant's investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.

See Excerpts from Deposition Transcript of Andrew Montella, attached as Exhibit 6.

20.    I met and conferred with Attorney Singh on the record during the

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

DECLARATION OF STEPHANIE TATAR IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF TRANS UNION

deposition on January 8, 2025.

21.    During this conversation, I reminded Attorney Singh that she had not requested and obtained a protective order which would have alleviated Trans Union's burden to designate a witness for all of the topics in the Notice of Deposition.

22.    Attorney Singh refused to agree to secure a witness to testify to the topics and refused to agree to a joint motion for additional time to complete the deposition.

23.    I also contacted the Court during the deposition while all attorneys were present to obtain assistance with this discovery dispute during the deposition but was advised by the Court's clerk that the Court was not available at that time.

24.    The deposition was not concluded and remains open.

25.    Attached to this Declaration as Exhibit 7 is an order entered by the District Court in the Eastern District of Michigan ordering Trans Union to produce a witness because it had not obtained a protective order. *Suri v. Equifax Info. Servs.*, LLC, No. 21-10866, 2022 U.S. Dist. LEXIS 83442 (E.D. Mich. May 9, 2022). The order also references the topics Trans Union must testify to.

26.    Attached to this Declaration as Exhibit 8 is an order entered in *Childers v. Rent-A-Car E., Inc.,* No. 21-960, 2024 U.S. Dist. LEXIS 41841 (E.D. La. Mar. 11, 2024).

27.    Attached to this Declaration as Exhibit 9 is an order entered in *Anderson v. Trans Union, LLC,* No. 2:22-cv-01214-GMN-NJK, 2023 U.S. Dist. LEXIS 118886, at *4 (D. Nev. July 11, 2023).

28.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  January 21, 2025

**TATAR LAW FIRM, APC.**
BY: /S/ *STEPHANIE R. TATAR*

**DECLARATION OF STEPHANIE TATAR IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF TRANS UNION**

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STEPHANIE R. TATAR

ATTORNEY FOR PLAINTIFF
IVYSHANNE ACORIN

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

7

EXHIBIT 1

1  **Tatar Law Firm, APC**
   Stephanie R. Tatar (SBN 237792)
2  3500 West Olive Ave., Ste 300
   Burbank, California 91505
3  (323) 744-1146
4  Stephanie@TheTatarLawFirm.com
   *Attorneys for Plaintiff,*
5  Ivyshanne Acorin

6

7              **UNITED STATES DISTRICT COURT**
                        **FOR THE**
8          **SOUTHERN DISTRICT OF CALIFORNIA**

9
   **IVYSHANNE ACORIN,**              **Case No.:** 3:24-cv-00034- AJB-BLM
10
              Plaintiff,             **PLAINTIFF'S NOTICE OF**
11                                   **DEPOSITION OF DEFENDANT**
                 v.                  **TRANS UNION LLC'S  PERSON(S)**
12                                   **MOST**
   **WELLS FARGO, N.A.,**            **KNOWLEDGABLE/QUALIFIED**
13
                                     Date:   January 3, 2025
14            Defendant.             Time:  9:00 a.m. PST
                                     Place: Videoconference
15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that under Federal Rule of Civil Procedure 30(b)(6) Plaintiff Ivyshanne Acorin ("Plaintiff"), by and through her counsel of record, will take the deposition of Defendant TRANS UNION, LLC's ("Defendant") 30(b)(6) person(s) most knowledgeable/qualified as to the topics detailed below, on January 3, 2025, at 9:00 a.m. PST, pursuant to FRCP Rule 30(a)(1).

Said deposition will take place online via videoconference. Said deposition will be taken upon oral examination before a qualified court reporter utilizing remote digital recording equipment. The court reporter will be remote and not in the physical presence of the witness. The deposition shall be conducted orally, under oath, and shall be recorded by video and/or stenographic means and will be used for all purposes authorized by the law. Plaintiff, through her attorneys, reserves the right to record the official record audio-visually by a DepoDirect Custodian of the Record utilizing state-of-the-art recording equipment. The Custodian is a Certified Notary and is authorized to administer the oath and serve as the deposition officer in the State of California.    Said deposition will continue from day to day, Sundays and holidays excepted, until completed. Said deposition will be conducted utilizing a secure deposition platform to provide remote access for all participants, including the witness, attorneys, and court reporter. Plaintiff reserves the right to take the deposition telephonically. Plaintiff reserves the right to audio and video record the deposition. Plaintiff reserves the right to use the recorded deposition at the time of trial.

PLEASE TAKE FURTHER NOTICE that Plaintiff, through her attorneys, also reserves the right to utilize the following: (1) record the deposition utilizing audio or video technology; (2) instant visual display such that the officer's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in real time; (3) exhibit capture technology in which any exhibit reviewed by the deponent during the deposition can be captured visually;

1  and (4) to conduct the deposition utilizing a paperless exhibit display process.

2  Plaintiff reserves the right to use the video, audio, display, and exhibit captures at

3  the time of trial.

4      In the event the deposition proceeds via videoconference (Zoom, Google

5  Meetings, etc.) The parties shall stipulate as follows:

6      (1) The Parties agree that the remote swearing of the witness is valid for trial

7  and impeachment purposes. The Parties stipulate that all objections to the use and

8  admissibility of the transcript or video of a deposition taken pursuant to this order

9  because the deposition was taken by remote means, that the Court Reporter was not

10  present with the deponent during the deposition, and/or that the Court Reporter is

11  not a notary public in same state as the place of examination are waived.

12      (2) The transcript and/or video recorded deposition may be used at a trial or

13  hearing to the same extent that an in-person deposition may be used at trial or

14  hearing, and the Parties agree not to object to the use of these video recordings on

15  the basis that the deposition was taken remotely. The Parties reserve all other

16  objections to the use of any deposition testimony at trial.

17      (3) As used in Fed. R. Civ. P. 28(a)(1)(A), the "place of examination" is the

18  location of the deponent.

19      (4) Deposing Counsel and Defending Counsel will meet, confer and

20  cooperate to ensure that the deponent has technology sufficient to attend a

21  deposition via remote means. If necessary, this may include arranging for the

22  deponent to participate in a "test run" of any deposition video conferencing platform

23  or software being utilized.

24      (5) Each person attending a deposition will be visible to all other participants

25  during the proceedings and their statements will be audible to all other participants.

26  All deposition attendees will make reasonable efforts to ensure their environments

27  are free from noise and distractions.

28      (6) The deponent(s) produced pursuant to the requested designations (the

"witness") below shall agree and certify that: (a) no other person shall be in the room during the deposition and all parties reserve the right to challenge any additional individual's presence as appropriate; (b) all technology that could be available to the witness during the course of the deposition shall be prohibited (i.e., cell phones, watches, e-mail and any other means of receiving information from others, including counsel, to be turned off); and (c) no video or audio recordings other than the official court reporter's are permitted. The witness shall certify to the above and that no other programs are open on the computer or device used to connect to the Zoom videoconference throughout the deposition. Breaks shall be allowed to permit the witness to respond to urgent other personal or business matters but the same rules regarding discussion with counsel and other persons while the deposition is pending shall be enforced. The Parties stipulate that no person may initiate a private conference with a deponent—including through text message, instant message, e-mail, chat function or by any other means—except during a break in the deposition. During these aforementioned breaks, the Parties may use private (virtual) breakout rooms or other means to communicate as otherwise permissible under the Federal Rules of Civil Procedure. Counsel for each party is responsible for providing for the logistics of their own manner of communication during a break.

Said deposition will be taken upon oral examination before a qualified court reporter. The deposition shall be conducted orally, under oath, and may be recorded by video and/or stenographic means and will be used for all purposes authorized by the law. Said deposition will continue from day to day, Sundays and holidays excepted, until completed. Plaintiff reserves the right to take the deposition remotely. Plaintiff reserves the right to audio and video record the deposition. Plaintiff reserves the right to use the recorded deposition at the time of trial.

The attorneys planning to participate in the deposition should contact the noticing attorney at least 5 business days prior to the deposition so that the necessary

credentials, testing and information, if necessary, can be provided prior to the deposition. Defendant shall identify the person(s) who will speak on its behalf on each topic below at least seven days before the deposition(s). The taking of this deposition may be adjourned from day to day until completed and may occur over several days if more than one person is necessary to provide the information requested.

IF AN INTERPRETER IS REQUIRED to translate testimony, notice of the same must be given five (5) days before deposition date and the specific language and/or dialect designated.

If Defendant's 30(b)(6) witness(es) and/or its counsel are unavailable on the date and time noticed for this deposition, Plaintiff demands that Defendant and/or its counsel notify Plaintiff/Plaintiff's counsel on or before November 18, 2024, and provide at least three dates on which Defendant and its counsel are available for this deposition.

In accordance with Federal Rule of Civil Procedure 30(b)(6), Plaintiff designates the matters identified below for examination. In construing these topics, the following instructions and definitions shall apply: "Plaintiff" shall mean Plaintiff IVYSHANNE ACORIN. "Defendant" shall mean TRANS UNION LLC.

**The Person(s) Most Knowledgeable/Qualified witness(es) designated by Defendant shall be prepared to address the following topics:**

1. The factual basis of each affirmative defenses that You pled as to Plaintiff's claims.

2. All of Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding investigating tradelines when a consumer claims the tradeline is the result of identity theft.

3. All of Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding Defendant's fraud alerts.

4. All of Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding communications with consumers who have claimed a debt was incurred due to identity theft.

5. All communications, written, verbal, or otherwise, between Defendant (including any of its staff and third party agents), and Plaintiff regarding the tradelines at issue Defendant was reporting or publishing about Plaintiff.

6. All communications, written, verbal, or otherwise between Defendant and its staff regarding the tradelines at issue Defendant was reporting or publishing about Plaintiff, including all internal notes, records, and communications.

7. All communications, written, verbal, or otherwise, internally within Defendant regarding the investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.

8. All communications, written, verbal, or otherwise, between Defendant and any third party, including but not limited to Plaintiff and/or the CRAs, regarding the investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.

9. All information regarding Defendant's investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.

10. The costs or expenses incurred by You in conducting each investigation into any dispute made by Plaintiff.

11. All information that was sent to Plaintiff in writing regarding the tradelines at issue, including but not limited to who it was sent to, when it was sent, how it was sent, who sent it, what information was sent, what address the information was sent to, etc.

12. All non-privileged communications, written, verbal, or otherwise between Defendant and any third-party regarding Plaintiff and the tradelines and

accounts at issue in this case.

13. The names and contact information of all of the fraud and/or identity theft department manager(s), assistants, and other person(s) responsible for creating, reviewing, conducting training on, inspecting, and implementing the fraud and identity theft related policies and practices of Defendant.

14. The names and contact information of all of fraud and/or identity theft department manager(s), assistants, and other person(s) responsible for creating, reviewing, conducting training on, inspecting, and implementing the debtor identification and verification policies and practices of Defendant.

15. The names and contact information of all of Defendant's employees and other person(s) who communicated with Plaintiff or anyone posing as Plaintiff, in writing, verbally, or otherwise, regarding the tradelines or accounts at issue.

16. All of the oral and written training provided to employees of Defendant from 2017 through the present regarding Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding fraud/identity theft.

17. All of the oral and written training provided to employees of Defendant from 2017 through the present regarding state and federal laws regarding credit reporting and fraud/identity theft.

18. The details of any and all insurance agreements by which Defendant is bound, under which an insurance company/business may be liable to satisfy all or part of a possible judgment in this action, or to indemnify or reimburse for payments made by Defendant to satisfy any potential judgment in this case.

19. Defendant's entire account file regarding the tradelines or accounts that are the subject of this case.

20. Defendant's entire account files regarding the Plaintiff in this case.

21. Defendant's written and oral policies and procedures regarding retention and/or destruction of records from 2017 through the present.

22. Defendant's actual practice regarding retention and/or destruction of records related to the debt at issue in this case and the Plaintiff.

23. Any and all complaints and allegations, including, but not limited to, lawsuits, demand letters, Better Business Bureau, State Licensing Agency, Yelp! reviews, Google reviews, any online review forum against Defendant for violation of credit reporting laws and/or fraud and identity theft laws in the preceding 36 months.

24. All lawsuits instituted against You based on alleged violations of the CCRAA Cal. Civ. Code §1785 et seq., and Fair Credit Reporting Act 15 U.S.C. §1681 during the 5 years prior to the filing of the Complaint.

25. All studies, audits, quality control analyses, or other investigations that You conducted regarding the frequency of identity theft disputes over the previous 5 years.

26. All studies, audits, quality control analyses, or other investigations that You conducted regarding the frequency of identity theft disputes involving Wells Fargo, N.A. over the previous 5 years.


DATED: November 14, 2024            **TATAR LAW FIRM, APC**

                                    BY: /s/ STEPHANIE R. TATAR
                                    ATTORNEY FOR PLAINTIFF,
                                    IVYSHANNE ACORIN

EXHIBIT 2



Stephanie Tatar <stephanie@thetatarlawfirm.com>

---

## Acorin v. TransUnion

---

**Stephanie Tatar** <stephanie@thetatarlawfirm.com>         Thu, Nov 14, 2024 at 9:10 AM
To: Jennifer Wade <jwade@qslwm.com>, cgiordano@qslwm.com
Cc: "Michael F. Cardoza" <Mike.Cardoza@cardozalawcorp.com>, Lauren Veggian
<lauren.veggian@cardozalawcorp.com>, Litigation Team <litigation@cardozalawcorp.com>, Keanush Hakimian
<keanush.hakimian@cardozalawcorp.com>

Jennifer:  I would like to take the deposition of Trans Union's 30(b)(6) witness on January 3.  Please confirm his/her/
their availability by November 18, 2024.  I am attaching the Notice of Deposition for that date, but am amenable to an
earlier date if that works better for the witness.

Thank you for your anticipated cooperation,
Stephanie

--

Stephanie R. Tatar
**Tatar Law Firm, APC**



3500 West Olive Avenue, Suite 300 | Burbank, California 91505
3333 Warrenville Road, Suite 200 I Lisle, Illinois 60532

Telephone: (323) 744-1146 | (312) 423-4994
Facsimile: (323) 967-7775

Stephanie@TheTatarLawFirm.com
**www.TheTatarLawFirm.com**

Licensed to Practice in Illinois and California

**NOTICE**
This communication may contain information that is privileged, confidential and/or exempt from disclosure under applicable law, including but
not limited to the Electronic Communications Privacy Act, 18 USC 2510-2521, the attorney-client privilege, or the attorney work
product doctrine. Any dissemination, distribution, copying, or use of this communication by or to anyone other than the designated and intended
recipient named above is unauthorized and is strictly prohibited. If you are not the intended recipient named above, please delete and/or destroy
this communication immediately.

Statement Required by U.S. Treasury Department: The U.S. Treasury Department requires us to inform you that, if any advice concerning one
or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be
used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed herein.

---

**2 attachments**

📄 **2024.11.14 02672 Acorin - NOD TU PMK.pdf**
203K

📄 **2024.11 14 01154 Acorin - POS Notice of Deposition 30(b)(6).pdf**
211K

EXHIBIT 3

**Acorin v. Wells Fargo et al**
**Deposition Scheduling Matrix**

Please indicate "yes" if one attorney from your office is available to attend the deposition.  If you are a "no" please input two dates you *are* available.

| Witness | Date Noticed **DO NOT ALTER** | Plaintiff | Wells Fargo | Experian | Equifax | Trans Union |
|---|---|---|---|---|---|---|
| Wells Fargo | 12/20/24 | yes | Y | Y | Y | Y |
| Experian | 12/12/24 | yes | Y | **Proposing 1/6** | Y | Y |
| Equifax | 12/5/2024 **SCHEDULED 12/4** | yes | Y (Dec. 3, 4, or 6) | Y | **Proposing 12/3, 12/4, or 12/6** | OK with dates Equifax proposed |
| Trans Union | 1/3/25 **SCHEDULED 1/8** | yes | Y (Jan. 7 or 8) | Y | Y | Proposing 1/7/25 or 1/8/25 |
| WF Investigator | Proposing 12/18/24 | yes | Y for Matthews and Martinmaas | Y | | |
| Exp Investigator | Proposing 12/10/24 | yes | Y | N | | |
| EIS Investigator2 | Proposing 12/3/24, 12/5, 12/19, 12/20 | yes | Y | Y | | |
| TU Investigator | Proposing 1/2/25 | yes | Y | Y | | |

EXHIBIT 4

**Tatar Law Firm, APC**
Stephanie R. Tatar (SBN 237792)
3500 West Olive Ave., Ste 300
Burbank, California 91505
(323) 744-1146
Stephanie@TheTatarLawFirm.com
*Attorneys for Plaintiff,*
Ivyshanne Acorin

## UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IVYSHANNE ACORIN,** | **Case No.:** 3:24-cv-00038- AJB-BLM |
| Plaintiff, | **PLAINTIFF'S NOTICE OF DEPOSITION OF DEFENDANT TRANS UNION LLC'S RULE 30(B)(6) WITNESS** |
| v. | |
| **TRANS UNION LLC.,** | Date:   January 8, 2025 |
| Defendant. | Time:  9:00 a.m. PST |
| | Place: Videoconference |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that under Federal Rule of Civil Procedure 30(b)(6) Plaintiff Ivyshanne Acorin ("Plaintiff"), by and through her counsel of record, will take the deposition of Defendant TRANS UNION, LLC's ("Defendant") 30(b)(6) person(s) most knowledgeable/qualified as to the topics detailed below, on January 8, 2025, at 9:00 a.m. PST, pursuant to FRCP Rule 30(a)(1).

Said deposition will take place online via videoconference. Said deposition will be taken upon oral examination before a qualified court reporter utilizing remote digital recording equipment. The court reporter will be remote and not in the physical presence of the witness. The deposition shall be conducted orally, under oath, and shall be recorded by video and/or stenographic means and will be used for all purposes authorized by the law. Plaintiff, through her attorneys, reserves the right to record the official record audio-visually by a DepoDirect Custodian of the Record utilizing state-of-the-art recording equipment. The Custodian is a Certified Notary and is authorized to administer the oath and serve as the deposition officer in the State of California. Said deposition will continue from day to day, Sundays and holidays excepted, until completed. Said deposition will be conducted utilizing a secure deposition platform to provide remote access for all participants, including the witness, attorneys, and court reporter. Plaintiff reserves the right to take the deposition telephonically. Plaintiff reserves the right to audio and video record the deposition. Plaintiff reserves the right to use the recorded deposition at the time of trial.

PLEASE TAKE FURTHER NOTICE that Plaintiff, through her attorneys, also reserves the right to utilize the following: (1) record the deposition utilizing audio or video technology; (2) instant visual display such that the officer's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in real time; (3) exhibit capture technology in which any exhibit reviewed by the deponent during the deposition can be captured visually;

1  and (4) to conduct the deposition utilizing a paperless exhibit display process.

2  Plaintiff reserves the right to use the video, audio, display, and exhibit captures at

3  the time of trial.

4      In the event the deposition proceeds via videoconference (Zoom, Google

5  Meetings, etc.) The parties shall stipulate as follows:

6      (1) The Parties agree that the remote swearing of the witness is valid for trial

7  and impeachment purposes. The Parties stipulate that all objections to the use and

8  admissibility of the transcript or video of a deposition taken pursuant to this order

9  because the deposition was taken by remote means, that the Court Reporter was not

10 present with the deponent during the deposition, and/or that the Court Reporter is

11 not a notary public in same state as the place of examination are waived.

12     (2) The transcript and/or video recorded deposition may be used at a trial or

13 hearing to the same extent that an in-person deposition may be used at trial or

14 hearing, and the Parties agree not to object to the use of these video recordings on

15 the basis that the deposition was taken remotely. The Parties reserve all other

16 objections to the use of any deposition testimony at trial.

17     (3) As used in Fed. R. Civ. P. 28(a)(1)(A), the "place of examination" is the

18 location of the deponent.

19     (4) Deposing Counsel and Defending Counsel will meet, confer and

20 cooperate to ensure that the deponent has technology sufficient to attend a

21 deposition via remote means. If necessary, this may include arranging for the

22 deponent to participate in a "test run" of any deposition video conferencing

23 platform or software being utilized.

24     (5) Each person attending a deposition will be visible to all other

25 participants during the proceedings and their statements will be audible to all other

26 participants. All deposition attendees will make reasonable efforts to ensure their

27 environments are free from noise and distractions.

28 (6) The deponent(s) produced pursuant to the requested designations (the

1  "witness") below shall agree and certify that: (a) no other person shall be in the
2  room during the deposition and all parties reserve the right to challenge any
3  additional individual's presence as appropriate; (b) all technology that could be
4  available to the witness during the course of the deposition shall be prohibited
5  (i.e., cell phones, watches, e-mail and any other means of receiving information
6  from others, including counsel, to be turned off); and (c) no video or audio
7  recordings other than the official court reporter's are permitted. The witness shall
8  certify to the above and that no other programs are open on the computer or
9  device used to connect to the Zoom videoconference throughout the deposition.
10 Breaks shall be allowed to permit the witness to respond to urgent other personal
11 or business matters but the same rules regarding discussion with counsel and other
12 persons while the deposition is pending shall be enforced. The Parties stipulate
13 that no person may initiate a private conference with a deponent—including
14 through text message, instant message, e-mail, chat function or by any other
15 means—except during a break in the deposition. During these aforementioned
16 breaks, the Parties may use private (virtual) breakout rooms or other means to
17 communicate as otherwise permissible under the Federal Rules of Civil
18 Procedure. Counsel for each party is responsible for providing for the logistics of
19 their own manner of communication during a break.
20 Said deposition will be taken upon oral examination before a qualified court
21 reporter. The deposition shall be conducted orally, under oath, and may be
22 recorded by video and/or stenographic means and will be used for all purposes
23 authorized by the law. Said deposition will continue from day to day, Sundays and
24 holidays excepted, until completed. Plaintiff reserves the right to take the
25 deposition remotely. Plaintiff reserves the right to audio and video record the
26 deposition. Plaintiff reserves the right to use the recorded deposition at the time of
27 trial.
28     The attorneys planning to participate in the deposition should contact the

noticing attorney at least 5 business days prior to the deposition so that the necessary credentials, testing and information, if necessary, can be provided prior to the deposition. Defendant shall identify the person(s) who will speak on its behalf on each topic below at least seven days before the deposition(s). The taking of this deposition may be adjourned from day to day until completed and may occur over several days if more than one person is necessary to provide the information requested.

IF AN INTERPRETER IS REQUIRED to translate testimony, notice of the same must be given five (5) days before deposition date and the specific language and/or dialect designated.

If Defendant's 30(b)(6) witness(es) and/or its counsel are unavailable on the date and time noticed for this deposition, Plaintiff demands that Defendant and/or its counsel notify Plaintiff/Plaintiff's counsel on or before November 18, 2024, and provide at least three dates on which Defendant and its counsel are available for this deposition.

In accordance with Federal Rule of Civil Procedure 30(b)(6), Plaintiff designates the matters identified below for examination. In construing these topics, the following instructions and definitions shall apply: "Plaintiff" shall mean Plaintiff IVYSHANNE ACORIN. "Defendant" shall mean TRANS UNION LLC. **The Person(s) Most Knowledgeable/Qualified witness(es) designated by Defendant shall be prepared to address the following topics:**

1. The factual basis of each affirmative defenses that You pled as to Plaintiff's claims.

2. All of Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding investigating tradelines when a consumer claims the tradeline is the result of identity theft.

3. All of Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding Defendant's fraud alerts.

4. All of Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding communications with consumers who have claimed a debt was incurred due to identity theft.

5. All communications, written, verbal, or otherwise, between Defendant (including any of its staff and third party agents), and Plaintiff regarding the tradelines at issue Defendant was reporting or publishing about Plaintiff.

6. All communications, written, verbal, or otherwise between Defendant and its staff regarding the tradelines at issue Defendant was reporting or publishing about Plaintiff, including all internal notes, records, and communications.

7. All communications, written, verbal, or otherwise, internally within Defendant regarding the investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.

8. All communications, written, verbal, or otherwise, between Defendant and any third party, including but not limited to Plaintiff and/or the CRAs, regarding the investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.

9. All information regarding Defendant's investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.

10. The costs or expenses incurred by You in conducting each investigation into any dispute made by Plaintiff.

11. All information that was sent to Plaintiff in writing regarding the tradelines at issue, including but not limited to who it was sent to, when it was sent, how it was sent, who sent it, what information was sent, what address the information was sent to, etc.

12. All non-privileged communications, written, verbal, or otherwise between Defendant and any third-party regarding Plaintiff and the tradelines and

accounts at issue in this case.

13. The names and contact information of all of the fraud and/or identity theft department manager(s), assistants, and other person(s) responsible for creating, reviewing, conducting training on, inspecting, and implementing the fraud and identity theft related policies and practices of Defendant.

14. The names and contact information of all of fraud and/or identity theft department manager(s), assistants, and other person(s) responsible for creating, reviewing, conducting training on, inspecting, and implementing the debtor identification and verification policies and practices of Defendant.

15. The names and contact information of all of Defendant's employees and other person(s) who communicated with Plaintiff or anyone posing as Plaintiff, in writing, verbally, or otherwise, regarding the tradelines or accounts at issue.

16. All of the oral and written training provided to employees of Defendant from 2017 through the present regarding Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding fraud/identity theft.

17. All of the oral and written training provided to employees of Defendant from 2017 through the present regarding state and federal laws regarding credit reporting and fraud/identity theft.

18. The details of any and all insurance agreements by which Defendant is bound, under which an insurance company/business may be liable to satisfy all or part of a possible judgment in this action, or to indemnify or reimburse for payments made by Defendant to satisfy any potential judgment in this case.

19. Defendant's entire account file regarding the tradelines or accounts that are the subject of this case.

20. Defendant's entire account files regarding the Plaintiff in this case.

21. Defendant's written and oral policies and procedures regarding retention

and/or destruction of records from 2017 through the present.

22. Defendant's actual practice regarding retention and/or destruction of records related to the debt at issue in this case and the Plaintiff.

23. Any and all complaints and allegations, including, but not limited to, lawsuits, demand letters, Better Business Bureau, State Licensing Agency, Yelp! reviews, Google reviews, any online review forum against Defendant for violation of credit reporting laws and/or fraud and identity theft laws in the preceding 36 months.

24. All lawsuits instituted against You based on alleged violations of the CCRAA Cal. Civ. Code §1785 et seq., and Fair Credit Reporting Act 15 U.S.C. §1681 during the 5 years prior to the filing of the Complaint.

25. All studies, audits, quality control analyses, or other investigations that You conducted regarding the frequency of identity theft disputes over the previous 5 years.

26. All studies, audits, quality control analyses, or other investigations that You conducted regarding the frequency of identity theft disputes involving Wells Fargo, N.A. over the previous 5 years.

DATED: November 20, 2024          **TATAR LAW FIRM, APC**

BY: /s/ STEPHANIE R. TATAR
ATTORNEY FOR PLAINTIFF,
IVYSHANNE ACORIN

---

**PLAINTIFF'S NOTICE OF DEPOSITION OF DEFENDANT TRANS UNION LLC          Page 7 of 7**

## PROOF OF SERVICE

I am a resident of the State of Illinois, over the age of eighteen years, and not a party to the within action. My business address is Tatar Law Firm, APC, 3500 West Olive Avenue, Suite 300, Burbank, CA 91505. On November 19, 2024, I served the within document(s) by:

**PLAINTIFF'S NOTICE OF DEPOSITION OF DEFENDANT EQUIFAX INFORMATION SERVICES, LLC**

☒E-MAIL - by transmitting via e-mail the document(s) listed above to the e-mail address(es) set forth below on this date before 11:59 p.m.

☐MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at _____ addressed as set forth below.

☐USPS Certified Mail - by placing the document(s) listed above in a sealed envelope with certified mail postage thereon fully prepaid, return receipt requested, in the United States mail at San Bernardino County, CA addressed as set forth below.

☐PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐CM/ECF - by transmitting electronically the document(s) listed above to the electronic case filing system on this date before 11:59 p.m. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record who are registered with the Court's CM/ECF system.

Peter B. Yould
Sarah Reise
Benjamin White
Troutman Pepper Hamilton Sanders LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130-2092
Peter.Yould@troutman.com
Sarah.Reise@troutman.com
benjamin.white@troutman.com
*Counsel for Wells Fargo Bank, N.A.*

John Vogt
Kristen Smith
Jones Day
4655 Executive Drive, Suite 1500

San Diego, CA 92121
javogt@jonesday.com
kristensmith@jonesday.com
*Counsel for Experian Information Solutions, Inc.*

Alice Hodsden
Jennifer Brooks
Heather Sharp
Seyfarth Shaw LLP
601 South Figueroa Street, Suite 3300
Los Angeles, CA 90017-5793
ahodsden@seyfarth.com
Jrbrooks@seyfarth.com
hsharp@seyfarth.com
*Counsel for Equifax Information Services, LLC*

Ritika Singh
Marc Kirkland
Cameron Giordano
Quilling, Selander, Lownds, Winslett & Moser, P.C.
6900 N. Dallas Parkway
Suite 800
Plano TX 75024
mkirkland@qslwm.com
rsingh@qslwm.com
cgiordano@qslwm.com
*Counsel for Trans Union*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on November 19, 2024, at Lisle, Illinois.

BY: *Stephanie R. Tatar*

# EXHIBIT 5

Ritika Singh (State Bar No. 329197)
rsingh@qslwm.com
Quilling, Selander, Lownds,
Winslett & Moser, P.C.
6900 N. Dallas Parkway, Suite 800
Plano, TX 75024
(214) 560-5442
(214) 871-2111 Fax
*Counsel for Trans Union LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVYSHANNE ACORIN,<br><br>        Plaintiff,<br><br>v.<br><br>TRANSUNION, LLC,<br><br>        Defendants. | Case No. 3:24-cv-00038-AJB-BLM<br><br>**DEFENDANT TRANS UNION LLC'S OBJECTIONS TO PLAINTIFF'S NOTICE OF DEPOSITION TOPICS OF TRANS UNION LLC** |

TO:   IVYSHANE ACORIN, through Plaintiff's counsel of record, Michael F. Cardoza and Lauren B. Veggian, The Cardoza Law Corporation, 548 Market Street, No. 80594, San Francisco, CA 94104, and Stephanie Tatar, Tatar Law Firm, APC, 3500 West Olive Avenue, Suite 300, Burbank, CA 91505.

COMES NOW, Trans Union LLC ("Trans Union") and serves its Objections to Plaintiff's Notice of Deposition Topics of Trans Union LLC's Corporate Representative.

## PRELIMINARY STATEMENT

Trans Union will respond to the Notice based on its best, good faith understanding and interpretation of each item. Accordingly, if Plaintiff

7752659.2

1

subsequently asserts a different interpretation than that previously understood by Trans Union, Trans Union reserves the right to supplement or amend these objections and responses. Trans Union's objections to the Notice do not constitute admission or acknowledgements that the information sought is within the proper scope of discovery.

## **GENERAL OBJECTIONS**

1.      Trans Union generally objects to Plaintiff's Request for Corporate Designee Deposition Dates of Trans Union ("Request") to the extent it seeks information protected by the attorney-client, work product, consulting expert, and joint defense privileges. Further, Trans Union objects to Plaintiff's Request to the extent it seeks testimony regarding confidential, proprietary, trade secret, and privileged information relating to Trans Union or its customers.

2.      Trans Union objects to Plaintiff's Request in its entirety on the grounds that Plaintiff has not sought other less burdensome and intrusive means to obtain the information sought (such as the use of a declaration), and Plaintiff has not agreed to reimburse Trans Union for the time and expense incurred for its employees to respond to this request and attorney's fees.

3.      Trans Union generally objects to Plaintiff's Request where no time period is specified as overly broad and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

4.      Trans Union generally objects to the Request, and each topic listed therein, to the extent it seeks testimony or information that is highly confidential, proprietary, or otherwise commercially sensitive information or trade secrets.

5.      Trans Union generally objects to the Request, and each topic listed therein, to the extent it imposes undue burden and expense on Trans Union. Further, the Request is not relevant or proportional to the needs of the case to the extent it is unlimited in time and scope. Such Request seeks to impose an obligation on Trans

Union that is not authorized by the Federal Rules of Civil Procedure and is objectionable on that ground.

6.      Trans Union generally objects to the Request, and each topic listed therein, to the extent it seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

These General Objections are incorporated in full in each of the specific responses below.

## II.    OBJECTIONS TO DEFINITIONS

1.      To the extent the Request incorporates all definitions provided in Plaintiff's Interrogatories, Requests for Admission, and Requests for Production, Trans Union similarly incorporates its objections to the same as fully set forth in Trans Union's Objections and Responses to Plaintiff's Interrogatories, Requests for Admission, and Requests for Production.

Trans Union makes these objections based on the information reasonably available at this time.  Trans Union reserves the right to amend or supplement its objections to these Deposition Topics as additional information is discovered or becomes available.  Furthermore, Trans Union will not be objecting to definitions not used in this Notice.  However, Trans Union reserves the right to object at a later time.

## III.    SPECIFIC OBJECTIONS TO TOPICS OF THE DEPOSITION

**DEPOSITION TOPIC NO. 1:** The factual basis of each affirmative defenses that You pled as to Plaintiff's claims.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).  This Topic seeks information beyond the scope of the claims and

defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1).  Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.  Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO. 2:** All of Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding investigating tradelines when a consumer claims the tradeline is the result of identity theft.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).    This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on

Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1).    Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.    FED. R. CIV. P. 26(c).    Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.    FED. R. EVID. 502.    Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO.3:** All of Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding Defendant's fraud alerts.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).    This Topic seeks information beyond the scope of the claims and defenses in this case.    Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1).    Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.    FED. R. CIV. P. 26(c).    Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.    FED. R. EVID. 502.    Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

7752659.2

5

**TOPIC NO. 4:** All of Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding communications with consumers who have claimed a debt was incurred due to identity theft.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit. FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties. FED. R. CIV. P. 26(c). Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges. FED. R. EVID. 502. Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO. 5:** All communications, written, verbal, or otherwise, between Defendant (including any of its staff and third party agents), and Plaintiff regarding the tradelines at issue Defendant was reporting or publishing about Plaintiff.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters.

FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.  Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO. 6:** All communications, written, verbal, or otherwise between Defendant and its staff regarding the tradelines at issue Defendant was reporting or publishing about Plaintiff, including all internal notes, records, and communications.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).  This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense,

7

7752659.2

work product, and attorney-client privileges.  FED. R. EVID. 502.  Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO. 7:** All communications, written, verbal, or otherwise, internally within Defendant regarding the investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).  This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.  FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.  Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO. 8:** All communications, written, verbal, or otherwise, between Defendant and any third party, including but not limited to Plaintiff and/or the CRAs, regarding the investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions

above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).   This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.  Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO. 9:** All information regarding Defendant's investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).   This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible

benefit.   FED. R. CIV. P. 26(c)(1).  Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.  Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO. 10:** The costs or expenses incurred by You in conducting each investigation into any dispute made by Plaintiff.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).   This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.   FED. R. CIV. P. 26(c)(1).  Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.

**TOPIC NO. 11:** All information that was sent to Plaintiff in writing regarding the tradelines at issue, including but not limited to who it was sent to, when it was sent, how it was sent, who sent it, what information was sent, what address the information was sent to, etc.

7752659.2

**OBJECTION:**  In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).   This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.   FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.  Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO. 12:** All non-privileged communications, written, verbal, or otherwise between Defendant and any third-party regarding Plaintiff and the tradelines and at issue in this case.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).   This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and

11

produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.  Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO. 13:** The names and contact information of all of the fraud and/or identity theft department manager(s), assistants, and other person(s) responsible for creating, reviewing, conducting training on, inspecting, and implementing the fraud and identity theft related policies and practices of Defendant.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).   This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.

7752659.2

**TOPIC NO. 14:** The names and contact information of all of fraud and/or identity theft department manager(s), assistants, and other person(s) responsible for creating, reviewing, conducting training on, inspecting, and implementing the debtor identification and verification policies and practices of Defendant.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit. FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties. FED. R. CIV. P. 26(c). Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges. FED. R. EVID. 502.

**TOPIC NO. 15:** The names and contact information of all of Defendant's employees and other person(s) who communicated with Plaintiff or anyone posing as Plaintiff, in writing, verbally, or otherwise, regarding the tradelines or accounts at issue.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters.

FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.

**TOPIC NO. 16:** All of the oral and written training provided to employees of Defendant from 2017 through the present regarding Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding fraud/identity theft.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).  This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.

14

**TOPIC NO. 17:** All of the oral and written training provided to employees of Defendant from 2017 through the present regarding state and federal laws regarding credit reporting and fraud/identity theft.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit. FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties. FED. R. CIV. P. 26(c). Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges. FED. R. EVID. 502.

**TOPIC NO. 18:** The details of any and all insurance agreements by which Defendant is bound, under which an insurance company/business may be liable to satisfy all or part of a possible judgment in this action, or to indemnify or reimburse for payments made by Defendant to satisfy any potential judgment in this case.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and

7752659.2

produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit. FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties. FED. R. CIV. P. 26(c). Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges. FED. R. EVID. 502.

**TOPIC NO. 19:** Defendant's entire account file regarding the tradelines or accounts that are the subject of this case.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit. FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties. FED. R. CIV. P. 26(c). Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges. FED. R. EVID. 502. Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO. 20:** Defendant's entire account files regarding the Plaintiff in this case.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit. FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties. FED. R. CIV. P. 26(c). Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges. FED. R. EVID. 502. Subject to and without waiving the foregoing objections, Trans Union will produce a witness to testify to non-objectionable portions of this Topic.

**TOPIC NO. 21:** Defendant's written and oral policies and procedures regarding retention and/or destruction of records from 2017 through the present.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and

17

produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.   FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.

**TOPIC NO. 22:** Defendant's actual practice regarding retention and/or destruction of records related to the debt at issue in this case and the Plaintiff.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).   This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.

**TOPIC NO. 23:** Any and all complaints and allegations, including, but not limited to, lawsuits, demand letters, Better Business Bureau, State Licensing Agency, Yelp! reviews, Google reviews, any online review forum against Defendant for violation

of credit reporting laws and/or fraud and identity theft laws in the preceding 36 months.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit. FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties. FED. R. CIV. P. 26(c). Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges. FED. R. EVID. 502.

**TOPIC NO. 24:** All lawsuits instituted against You based on alleged violations of the CCRAA Cal. Civ. Code §1785 et seq., and Fair Credit Reporting Act 15 U.S.C. §1681 during the 5 years prior to the filing of the Complaint.

**OBJECTION:** In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on

7752659.2

Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1).    Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.   FED. R. CIV. P. 26(c).   Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.

**TOPIC NO. 25:** All studies, audits, quality control analyses, or other investigations that You conducted regarding the frequency of identity theft disputes over the previous 5 years.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).   This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1).    Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.   FED. R. CIV. P. 26(c).   Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.

**TOPIC NO. 26:** All studies, audits, quality control analyses, or other investigations that You conducted regarding the frequency of identity theft disputes involving Wells Fargo, N.A. over the previous 5 years.

**OBJECTION:**  In addition to the General Objections and Objections to Definitions

20

above, which are incorporated herein by this reference, Trans Union objects to this Topic on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P. 26(b)(1).   This Topic seeks information beyond the scope of the claims and defenses in this case.  Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit.    FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties.  FED. R. CIV. P. 26(c).  Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges.  FED. R. EVID. 502.

DATED:  January 6, 2025.                QUILLING, SELANDER, LOWNDS,
                                        WINSLETT & MOSER P.C.


                                By:  */s/ Ritika Singh*
                                     Ritika Singh
                                     Counsel for Trans Union LLC

7752659.2

## <u>CERTIFICATE OF SERVICE</u>

**STATE OF TEXAS, COUNTY OF COLLIN**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Collin, State of Texas. My business address is 6900 N. Dallas Parkway, Suite 800, Plano, Texas 75024.

On January 6, 2025, I served true copies of the following document(s) described as **DEFENDANT TRANS UNION LLC'S OBJECTIONS TO PLAINTIFF'S NOTICE OF DEPOSITION TOPICS** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

☐    **BY CERTIFIED MAIL:** I caused such envelope with postage thereon fully prepaid to be placed in the U.S. Mail at Plano, Texas. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Plano, Texas in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒    **BY EMAIL:** I emailed such documents to the addressees at their email addresses on the attached list.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 6, 2025, at Plano, Texas.


*/s/ Ritika Singh*
Ritika Singh

7752659.2

22

<u>**SERVICE LIST**</u>

| | |
|---|---|
| Lauren Brooks Veggian | Benjamin William White |
| Lauren.veggian@cardozalawcorp.com | benjamin.white@troutman.com |
| Michael Frederick Cardoza | Peter Jacob Kozaczuk |
| Mike.cardoza@cardozalawcorp.com | jacob.kozaczuk@troutman.com |
| Cardoza Law Corp | Troutman Pepper |
| 548 Market Street, #80594 | 11682 El Camino Real |
| San Francisco, CA 94104 | Suite 400 |
| (619) 483-1109 | San Diego, CA 92130 |
| (415) 651-9700 Fax | 858-509-6070 |
| *and* | Fax: 858-509-6040 |
| Stephanie Renee Tatar | *and* |
| stephanie@thetatarlawfirm.com | David M. Gettings |
| Tatar Law Firm, APC | david.gettings@troutmansanders.com |
| 3500 West Olive Ave., Suite 300 | Troutman Pepper Hamilton Sanders LLP |
| Burbank, CA 91505 | 222 Central Park Avenue |
| (323) 744-1146 | Suite 2000 |
| (888) 778-5695 Fax | Virginia Beach, VA 23462 |
| ***Counsel for Plaintiff*** | 757-687-7500 |
| | Fax: 757-687-7510 |
| Kristen Jessica Smith | *and* |
| kristensmith@jonesday.com | Peter Yould |
| Jones Day | peter.yould@troutman.com |
| 4655 Executive Drive | Troutman Pepper |
| Suite 1500 | 100 Spectrum Center Drive |
| San Diego, CA 92121 | Suite 1500 |
| 858-314-1147 | Irvine, CA 92618 |
| ***Counsel for Experian Information*** | 949-622-2421 |
| ***Solutions, Inc.*** | *and* |
| | Sarah T. Reise |
| Alice Maria Grabe Hodsden | sarah.reise@troutman.com |
| ahodsden@seyfarth.com | Troutman Pepper Hamilton Sanders LLP |
| Seyfarth Shaw LLP | 600 Peachtree Street NE |
| 601 South Figueroa Street | Suite 3000 |
| Suite 3300 | Atlanta, GA 30308 |
| Los Angeles, CA 90017 | 404-885-3000 |
| 626-831-8379 | Fax: 678-420-9301 |
| ***Counsel for Equifax Information*** | ***Counsel for Wells Fargo, N.A.*** |
| ***Solutions, LLC*** | |

23

EXHIBIT 6

EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINNY SURI,                                    Case No.: 21-10866
                Plaintiff,

v.                                             Laurie J. Michelson
                                               United States District Judge

EQUIFAX INFORMATION
SERVICES, LLC, *et al.*,                       Curtis Ivy, Jr.
                Defendants.    United States Magistrate Judge
_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL (ECF No. 67) AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (ECF No. 71)

### I.    PROCEDURAL HISTORY

Plaintiff Tinny Suri ("Suri") sued Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), Wells Fargo Bank, N.A. ("Wells Fargo"), and Michigan Department of Attorney General ("Attorney General"). (ECF No. 1). Plaintiff moved to compel deposition witnesses from Defendant Trans Union (ECF No. 67) and Defendant Experian (ECF No. 71). Plaintiff also moved to seal ECF No. 71 (ECF No. 72) and his response to Experian's response to ECF No. 71 (ECF No. 83). The motions were referred to the undersigned. (ECF No. 77).

The parties appeared for a virtual motion hearing. Counsel for Plaintiff, Trans Union, and Experian argued on Plaintiff's motions to compel. (ECF Nos.

67, 71). Plaintiff and counsel for Experian agreed that Plaintiff's motions to seal were unnecessary, as depositions Plaintiff sought to protect were filed unredacted for the record. Plaintiff's motions to seal were denied as moot. (ECF No. 91). The undersigned ordered further briefing from Plaintiff on the relevance of the requested discovery. (ECF No. 90). Plaintiff filed supplemental briefings (ECF Nos. 92, 93), to which Trans Union (ECF No. 94) and Experian responded (ECF No. 95). This matter is now fully briefed.

## II.    BACKGROUND

Plaintiff alleges violations of the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. § 1681o and 28 U.S.C. § 1331,1337. (ECF No. 1, PageID.1). Plaintiff's wife Debra Suri ("Mrs. Suri") opened an open-ended credit account in 2015 with Wells Fargo as primary obligor and Plaintiff as secondary. (*Id.* at PageID.3). Plaintiff alleges they made regular payments on that account through 2018. In April 2018, Mrs. Suri filed for Chapter 7 bankruptcy. As part of a reaffirmation agreement with Wells Fargo, Plaintiff, and Mrs. Suri agreed the account would be paid in full and excluded from bankruptcy proceedings. (*Id.*). Plaintiff alleges he and Mrs. Suri paid off the account in full. Though they continued to make payments, Plaintiff alleges Wells Fargo made false credit reports to Experian, Equifax, and Trans Union. (*Id.* at PageID.4). As a result, among other things, Mrs. Suri's credit score dropped. Wells Fargo refused to correct the report.

2

Plaintiff disputed the report with Equifax, Experian, and Trans Union. After Wells
Fargo verified the report with the agencies, the report remained. (*Id.* at PageID.6-
10). Plaintiff alleges that Defendants violated their duties under the FCRA.
Plaintiff requests a trial by jury. Plaintiff demands actual damages for emotional
distress, humiliation, frustration, and embarrassment. He also demands statutory
and punitive damages, costs, and attorney fees, and any other relief the court finds
just. (*Id*. at PageID.10-11).

In his first Motion to Compel (ECF No. 67), Plaintiff argues Trans Union
presented a witness for a November 23, 2021 deposition who was unprepared to
testify about the "Designated Topics."[1] Trans Union did not move for a protective
order before discovery closed, so Defendant's objections are moot. Thus, Plaintiff
asserts Trans Union must present a 30(b)(6) witness prepared to testify about the
Designated Topics and grant Plaintiff all other just and proper relief. (ECF No. 67,
PageID.760-62). Plaintiff also wanted 30(b)(1) witnesses. (*Id*. at PageID.762-64).
That said, neither party mentioned the request for 30(b)(1) witnesses in the
statement of unresolved issues (ECF No. 87), during the motion hearing, or in
further supplemental briefings (ECF Nos. 93, 94). So, the dispute appears
resolved.

---

[1] Detailed in the deposition notice for November 23, 2021. (ECF No. 67-1).

3

In his second Motion to Compel, Plaintiff argues Experian's 30(b)(6) witness was unprepared to testify about the noticed Topics during her December 22, 2021 Deposition. (ECF No. 71, PageID.823-24). Though Experian objected to the initial notice, they never moved for protective order. Thus, Experian must produce a 30(b)(6) witness prepared to testify about the Designated Topics and grant Plaintiff any other proper relief. (*Id.* at PageID.833).

In his first supplemental brief, Plaintiff argues the Designated Topics are relevant to Trans Union's notice of the account dispute, establishing damages, willfulness, and punitive damages. (ECF No. 93). In response, Trans Union argues the Designated Topics are irrelevant because Plaintiff's dispute is really with Wells Fargo and there is no evidence Plaintiff was denied credit due to Trans Union's credit scoring. (ECF No. 94).

In his second supplemental brief, Plaintiff argues the Designated Topics are relevant to the accuracy of Experian's investigations of disputes, notice, willfulness, and punitive damages. (ECF No. 92). In response, Experian argues they already offered adequate testimony and discovery for punitive damages is irrelevant now. (ECF No. 95).

## III. ANALYSIS

### A. Legal Standards

#### 1. Motion to Compel

4

Rule 37(a) allows for an Order Compelling Discovery upon motion from the party seeking discovery. Fed. R. Civ. P. 37(a). The motion must include certification that the movant has in good faith conferred or tried to confer with the person or party failing to make disclosure or discovery to obtain it without court action. Fed. R. Civ. P. 37(a)(1). A party may compel response from a party under Rule 30, or from a corporation that fails to make appropriate designation under Rule 30(b)(6) or 31(a)(4). Fed. R. Civ. P. 37(a)(3). Local Rule 37.1 applies Local Rule 7.1 to discovery motions. Local Rule 7.1 requires the movant to explain "the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought." E.D. Mich. LR 7.1(a)(2)(A).

### 2. Rule 30(b)(6) Deposition

Rule 30(b)(6) governs the procedure for taking a corporation's deposition. Under Rule 30(b)(6), a party may depose a corporation or organization by issuing a notice or subpoena that "describe[s] with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "Obviously it is not literally possible to take the deposition of a corporation; instead, when a corporation is involved, the information sought must be obtained from natural persons who can speak for the corporation." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure, § 2103, at 451 (3d ed. 2010).

5

Rule 30(b)(6) requires a corporation to designate a person who can testify about information *known or reasonably available* to the corporation. Although the designated person need not know about the facts to which he testifies, he must be prepared by the corporation so that he can adequately testify about the corporation's position. *See FDIC v. Butcher*, 116 F.R.D. 196, 199 (E.D. Tenn. 1986) (stating that a corporation must make a good-faith effort to designate persons knowing about the matter sought and to prepare those persons), *aff'd by* 116 F.R.D. 203 (E.D. Tenn. 1987). Rule 30(b)(6) does not require "absolute perfection in preparation," but the corporation "'must make a conscientious good faith endeavor to designate the persons having knowledge of the matters sought by the requesting party and to prepare those persons in order that they can answer fully, completely, and unevasively, the questions posed . . . as to the relevant subject matters.'" *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D. Md. 2005) (citations omitted). To put forth a good-faith effort, the party must attempt to "collect information, review documents, and interview employees with personal knowledge." *Id.*; *see also Georgia-Pac. Consumer Prod., LP. v. NCR Corp.*, 2015 WL 11236844, at *2 (W.D. Mich. Feb. 23, 2015) ("A 30(b)(6) witness is testifying as to the collective knowledge and information known or reasonably available to the corporation, and in preparation may be required to gather documents, interview

6

witnesses and become familiar with each topic to which he will be called upon to

testify.").

      "If a Rule 30(b)(6) deponent is unprepared to answer questions regarding the

topics in the deposition notice, it is as if the witness failed to appear for the

deposition at all, and sanctions may be appropriate under Fed. R. Civ. P 37(d)."[2]

*Parrottino v. Bankers Life & Cas. Co.*, 2014 WL 1516195, at *8 (E.D. Mich. Apr.

17, 2014); *see also Newfrey LLC v. Burnex Corp.*, 2009 WL 3698548, at *2 (E.D.

Mich. Nov. 5, 2009) (citing *Resolution Trust Corp. v. Southern Union Co.*, 985

F.2d 196, 197 (5th Cir.1993)).  Failure to appear is not excused if the respondent

objects, unless the "party failing to act has a pending motion for protective order

under Rule 26(c)." Fed. R. Civ. P. 37(d)(2).

      Late filed motions for protective order may waive respondent's objections to

30(b)(6) notice.  *U.S., ex rel. Fry v. Health All. of Greater Cincinnati*, 2009 WL

5227661, at *2 (S.D. Ohio Nov. 20, 2009) ("It 'is not proper practice [ ] to refuse

to comply with the [Rule 30(b)(6) ] notice, put the burden on the party noticing the

deposition to file a motion to compel, and then seek to justify non-compliance in

---

[2] "(A)Motion; Ground for Sanctions.  The Court where the action is pending may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition; or (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response."  Fed. R. Civ. P. 37(d).

opposition to the motion to compel.'") (citations omitted).  That said, failure to

properly object need not mean the discovery must be disclosed.  The requested

discovery must still be relevant, and the court may "'examine the circumstances of

each case, including the reason for tardy compliance, prejudice to the opposing

party, and the facial propriety of the discovery requests, to determine whether

enforcement of the waiver is equitable.'"  *Firneno v. Nationwide Mktg. Servs., Inc.*,

2016 WL 11582360, at \*1 (E.D. Mich. Mar. 24, 2016) (quoting *Carfagno v.

Jackson Nat'l Life Ins. Co.*, 2001 WL 34059032, at \*1 (W.D. Mich. Feb. 13,

2001)).

Relevant evidence is evidence that makes the existence of any fact that is of

consequence to the determination of the action more probable or less probable than

it would be without the evidence.  Fed. R. Evid. 401.  For 15 U.S.C. § 1681i

claims, a plaintiff must prove the credit reporting agency had notice of the disputed

accuracy on his account.  After notice, the agency failed to conduct a reasonable

reinvestigation.  Following reinvestigation, the agency failed to adjust the record

by confirming the report or deleting inaccuracies from plaintiff's file which caused

plaintiff harm.  *Turner v. Experian Info. Sols., Inc.*, 2018 WL 3648282, at \*2 (6th

Cir. Mar. 1, 2018).  It is unclear whether a plaintiff must prove the credit report

was inaccurate for §1681i liability, but this Circuit has noted that "damages would

be almost impossible to prove without [proving inaccuracy]."  *Salei v. Am. Exp.*

8

*Travel Related Servs. Co.*, 134 F.3d 372 (6th Cir. 1997) (table).  Plaintiffs can establish actual damages through proving the inaccurate entry was a "'substantial factor'" in denial of credit.  *Roberts v. Trans Union LLC*, 2007 WL 1308682, at *8 (E.D. Mich. May 3, 2007) (citing *Garrett v. Trans Union, L.L.C.*, 2006 WL 2850499, at *10 (S.D. Ohio Sept. 29, 2006)).  Plaintiffs can prove actual damages by explaining in sufficient detail the emotional distress and humiliation he suffered knowing defendant distributed an inaccurate credit report to a third party.  *Roberts*, 2007 WL 1308682, at *8.

To willfully violate § 1681, the noncompliance must have "an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 610 (6th Cir. 2016) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 49 (2007)).  To prove a willful violation, a plaintiff must provide more evidence than their dispute alone.  *Smith*, 837 F.3d at 610-11.  In examining a willful violation, courts can also consider the agency's efforts to combat inaccuracies and dispute rates.  *Id.*

### B. Discussion

#### 1. Motion to Compel 30(b)(6) Deposition from Defendant Trans Union (ECF No. 67)

Plaintiff contends Trans Union failed to produce a witness prepared to testify about account disputes and credit reporting accuracy.  Since Trans Union did not move for a protective order, they waived their objections and must present a

prepared witness on these topics. (ECF No. 67). Trans Union claims parties did

not confer, and their witness already testified on unobjectionable topics. (ECF No.

76). Plaintiff responds Parties conferred and Trans Union waived any objection to

the deposition because they failed to file a timely protective order. (ECF No. 80).

Plaintiff claims Topic a of the Designated Topics is relevant to damages and

Topics b through h are relevant to notice, willful disregard, and the

constitutionality of a potential punitive damage award. (ECF No. 93). Trans

Union finds the Topics irrelevant because Plaintiff's dispute is with Wells Fargo

and he has no proof he was denied credit due to Trans Union's credit scoring.

(ECF No. 94).

The Parties did meet and confer as required by Fed. R. Civ. P 37(a) and E.D.

Mich. LR 7.1. In emails, the Parties discuss Plaintiff's desire for additional

testimony and had a telephone conference on December 8, 2021. (ECF No. 67-4,

PageID.800). On December 31, 2021 Plaintiff's counsel clarified he wanted to

"question [defendant's] 30(b)(6) [witness] on the willfulness related topics and to

depose one of the current . . . Metro 2 Task Force reps. Would you agree to any of

that?" (*Id*. at PageID.799). Defendant confirmed Trans Union's refusal to sit for

another deposition. (*Id.* at PageID.797). Plaintiff then notified Defendant he

would file this motion, asked if they properly met and conferred, and offered more

discussion if necessary. (*Id.* at PageID.796). Defendant replied: "I think we can

10

say that we met and conferred." (*Id.* at PageID.795). Defendant later objected to Plaintiff's motion, because the parties did not meet and confer about the Designated Topics. Plaintiff's counsel reminded Defendant they conferred through email. (*Id.* at PageID.794-95).

The Parties' email exchange satisfies the requirements of both Fed. R. Civ. P. 37 and Local Rule 7.1. The email exchange is detailed and addresses Plaintiff's issues with the depositions. While the emails may not necessarily comply with the formality required in Local Rule 7.1, it is clear the parties did meaningfully confer to resolve the issue. Plaintiff did not violate Local Rule 7.1. *See Int'l IP Holdings, LLC v. Green Planet, Inc*., 2017 WL 282044, at *3 (E.D. Mich. Jan. 23, 2017) (detailed back-and-forth email exchange between counsel trying to resolve discovery dispute complied with Local Rule 7.1). This email exchange also satisfies the requirements of Fed. R. Civ. P. 37 (a), as Plaintiff references the Parties' conference and attached their resulting email exchange to his motion. *Id.*; *see also Westley v. CCK Pizza Co.*, LLC, 2019 WL 3801624, at *2 (E.D. Mich. Aug. 13, 2019); *William Beaumont Hosp. v. Medtronic, Inc*., 2010 WL 2534207, at *5 (E.D. Mich. June 18, 2010) (email exchange between parties fulfilled the good-faith requirement of Rule 37 and Loc. Rule 37.1); *Atifah v. Union Sec. Ins. Co.*, 2008 WL 2714459, at *1 (E.D. Mich. July 8, 2008); *Dixon v. Ford Motor Co*., 2018 WL 7048327, at *1 (E.D. Mich. June 5, 2018).

11

Parties who fail to prepare 30(b)(6) deponents may be sanctioned for failure to appear unless they move for a protective order. *Parrottino v. Bankers Life & Cas. Co.*, 2014 WL 1516195, at *8; Fed. R. Civ. P. 37(d)(2). That said, the moving party is not entitled to the testimony if it would be cumulative, duplicative, unreasonably burdensome, and disproportionate to the needs of the case. *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019); Fed. R. Civ. P. 26(b)(1). The testimony must be nonprivileged and relevant to any party's claim or defense. *Edwards*, 331 F.R.D. at 121 (citing Fed. R. Civ. P. 26(b)(1)).

Topic a is relevant to damages. In Topic a, Plaintiff asks Trans Union to testify to the effect of the disputed information on his credit score over the preceding five years. (ECF No. 67-1, PageID.767). This information could help Plaintiff prove whether the alleged inaccuracy lowered his credit score. If it did, the lower score could be a "substantial factor" precluding him from credit which could show actual damages. *Roberts*, 2007 WL 1308682, at *8. When asked this question during the deposition, Trans Union objected because they "served objections to these responses" and the witness lacked access to the credit information. (ECF No. 67-3, PageID.784-85). Since this information is relevant to Plaintiff's claim and Trans Union failed to move for the necessary protective order, Trans Union must prepare a witness to testify to Topic a.

12

Topics b through h are relevant to both Plaintiff's willful §1681i claim and Trans Union's defense against it. In Topics b through f, Plaintiff asks Trans Union to testify to dispute rates, correction rates, and audits of the accuracy of their reporting and data furnishing reporting in the preceding three years. (ECF No. 67-1, PageID.767-79). High dispute and correction rates, or audits of credit report accuracy may prove whether Trans Union knew or should have known about problems with their credit reporting or Wells Fargo's reporting, which could prove willful violation of §1681i. *Smith*, 837 F.3d at 610-11. This information could also help Trans Union defend against a claim of willful violation. Low dispute and correction rates, and self-imposed audits of credit reporting could prove Trans Union did not willfully violate §1681i, because there is evidence of Trans Union's efforts to combat inaccuracies. *Id.* (Plaintiff failed to prove willful violation of §1681 when court considered low dispute rate and LexisNexis's procedures in place to combat inaccuracies). Topics g and h ask if Trans Union corrected information in other reports. Plaintiff cannot make a willful claim with just a single inaccuracy; evidence of more disputes and inaccuracies can show willfulness. *Id.* Trans Union's designated witness did not fully testify on Topics b through h, as Trans Union objected to them as irrelevant, so the witness was unprepared to answer the questions. (ECF No. 67-3, PageID.785-90; ECF No. 76, PageID.1076-79). Since testimony on the Topics is relevant, and Trans Union

13

failed to move for the necessary protective order, Trans Union must prepare a witness to testify to Topics b through h.

### 2. Motion to Compel 30(b)(6) Deposition from Defendant Experian (ECF No. 71)

Plaintiff contends Experian failed to produce a witness prepared to testify on the Designated Topics. (ECF No. 71). Defendant argues parties did not properly confer under Judge Michelson's Case Management Order (ECF No. 30), and Experian's witness already testified on the relevant Topics. (ECF No. 79). Plaintiff replies the parties properly conferred, Plaintiff's motion was timely, and Defendant waived relevance objections when they failed to move for a protective order. (ECF No. 82). Plaintiff argues Topics a, g, m, p, and v ("Notice Topics") relate to whether Experian had notice of his dispute and whether they disregarded it as "frivolous" or "suspicious." Topics c, d, f, u, x, y, cc, dd, and ee ("Accuracy Topics") are relevant to the accuracy of Experian's report, specifically how they decide an account is charged off. Topics i, o, q, r, s, and t ("Dispute Metrics Topics") relate to dispute metrics and Topic ii seeks financial information relevant to confirm the constitutionality of a punitive damage award from Experian. (ECF No. 92). Experian contends they fully testified about notice of the dispute, how they reported Plaintiff's account as charged off, and dispute metrics. Also, Experian's financial information is irrelevant to liability, as the Court already noted in denying a previous discovery request. (ECF No. 95).

The Case Management Order requires parties to meet and confer, then hold a telephone conference with the Court, before referring a discovery dispute to the Magistrate Judge.  (ECF No. 30, PageID.236-37).  While there is no record of a telephonic conference with Judge Michelson, parties did meet and confer.  Counsel discussed Plaintiff's desire for additional 30(b)(6) testimony via email and had a telephone conference on January 5, 2022.  (ECF No. 82-2, PageID.1440-46). Since Judge Michelson did refer this discovery dispute, the Court may have been satisfied without conference between the parties and the Court.  Plaintiff failed to attach a complete transcript as required by the Case Management Order.  That said, failure to comply with the Order may only result in an award of "costs and reasonable attorney's fees" against the non-complying party.  (ECF No. 30, PageID.237).  So, Plaintiff's non-compliance is not dispositive for this motion.

Some of the Notice Topics are relevant to Plaintiff's claim because Plaintiff must show Experian had notice of his dispute to make a §1681i claim against Experian.  *Turner*, 2018 WL 3648282, at *2.  That said, Experian testified fully on many Topics.  Topics a, g, and m, which ask if Experian received his dispute, who received it if they did, and if Experian audits "frivolous" or "suspicious" disputes, were fully answered by Experian's witness.  Experian explained they did not receive Plaintiff's dispute, so no one signed for it.  They also explained that "frivolous" disputes are reviewed during reinvestigation.  (ECF No. 79-2,

15

PageID.1201-02). Topic p, whether Experian audits the number of disputes allegedly lost, does not make whether Experian had notice of Plaintiff's specific dispute more likely, since Experian already explained they did not receive his dispute. Topic v, compensation and training of mailroom staff, is irrelevant to whether Experian had notice of Plaintiff's dispute because revealing staff training or compensation will not reveal if Experian received Plaintiff's dispute. Plaintiff is not entitled to further testimony on the Notice Topics.

The Accuracy Topics are relevant to Plaintiff's claim because the accuracy of Experian's reporting is essential to proving damages. *Salei*, 134 F.3d at 372. That said, Experian fully testified to most of the Accuracy Topics. Experian answered topics c, d, f, cc, dd, and ee by explaining that it derives the reporting of accounts directly from data furnishers like Wells Fargo. (ECF No. 79-2, PageID.1177-81). Topics x and y concern the conclusion of internal Experian legal memos and analysis which are privileged. Plaintiff is only entitled to nonprivileged relevant discovery, so he cannot compel this testimony. Fed. R. Civ. P. 26(b)(1). Experian failed to fully answer Topic u, which asks about procedures for auditing data furnishers like Wells Fargo. Experian's witness explained that they audit Wells Fargo for accuracy but was unprepared to describe how Experian conducts these audits. (*Id.* at PageID.1206). Since Topic u is relevant to accuracy, Plaintiff is entitled to further testimony on this topic.

16

The Dispute Metric Topics are relevant to both Plaintiff's willful § 1681i claim and Experian's defense against it.  High dispute and correction rates, or audits of credit report accuracy may prove whether Experian should have known about problems with their credit reporting, which could prove willful violation of § 1681i.  *Smith*, 837 F.3d at 610-11.  This information could also help Experian defend against a claim of willful violation, as the opposite could prove Experian did not willfully violate § 1681i because it worked to combat inaccuracy.  *Id.*  That said, Experian does not keep records on the number of disputes it receives.  (ECF No.79, PageID.1140; ECF No. 95, PageID.1547).  So further testimony from Experian on this topic is unnecessary.

Experian's revenue and income statements are irrelevant right now.  As the Court stated on the record, during the liability stage, assessing the financial feasibility of the punitive damage award is premature.  (ECF No. 64)  So Plaintiff is not entitled to further testimony on Experian's finances now.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's motion to compel Trans Union (ECF No. 67) is **GRANTED** and Plaintiff's motion to compel Experian (ECF No. 71) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

17

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2. The district judge may sustain an objection only if the order is clearly erroneous or contrary to law. 28 U.S.C. § 636.

Date: May 9, 2022                                 s/Curtis Ivy, Jr.
                                                  Curtis Ivy, Jr.
                                                  United States Magistrate Judge

EXHIBIT 8

1
2
3                    **UNITED STATES DISTRICT COURT**
4                         **DISTRICT OF NEVADA**
5
6    ERIKA ANDERSON, et al.                    Case No. 2:22-cv-01214-GMN-NJK
7          Plaintiffs,
                                                          **Order**
8    v.
                                               [Docket Nos. 42, 44]
9    TRANS UNION, LLC,
          Defendant.
10

11          Pending before the Court is Plaintiffs' motion to compel.  Docket No. 42.  Defendant filed

12   a response, Docket No 47, and Plaintiffs filed a reply, Docket No. 50.  Also pending before the

13   Court is Plaintiffs' motion to seal.  Docket No. 44.  Defendant filed a response to the motion to

14   seal.  Docket No. 48.  For the reasons more fully discussed below, Plaintiffs' motion to compel is

15   **GRANTED** in part and **DENIED** in part.  Also for the reasons more fully discussed below,

16   Plaintiffs' motion to seal is **GRANTED**.

17          Plaintiffs allege that Defendant violated the Fair Credit Reporting Act by failing to conduct

18   reasonable reinvestigations in response to Plaintiffs' dispute letters.  Docket No. 19 at 15.

19   Plaintiffs now move to compel Defendant to respond to several interrogatories and requests for

20   production.  Docket No. 42 at 7, 9, 12-14.  Plaintiffs seek this discovery both to prove their claims

21   and to respond to Defendant's drafted but yet-to-be filed motion for Federal Rule of Civil

22   Procedure 11 sanctions.[1]  *Id.* at 2.

23
24
25
26   ---
     [1]      In general, discovery relating to motion for sanctions under Federal Rule of Civil Procedure
27   11 should be allowed only in "extraordinary circumstances."  *E.g.*, *Hall v. Marriott Int'l, Inc.*,
     2022 WL 3718838, at *3 (S.D. Cal. Aug. 29, 2022) (internal citations omitted).  However, because
28   each category of discovery allowed is relevant to either parties' underlying claims or defenses, the
     Court need not address whether the instant case constitutes "extraordinary circumstances."

I.    STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …."  Fed. R. Civ. P. 26(b)(1). Relevance during discovery is broader than relevance at trial.  *E.g., F.T.C. v. AMG Services, Inc.*, 291 F.R.D. 544, 552 (D. Nev. 2013).  "The party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted."  *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019).  Meeting that burden requires the objecting party to explain "how each of its objections is applicable, by providing the relevant standard for each objection and a meaningfully developed argument as to how the standard has been met."  *Hinostroza v. Denny's Inc.*, 2018 WL 3212014, *1 (D. Nev. June 29, 2018) (citing *Green v. Bacca*, 226 F.R.D. 624, 653 (C.D. Cal. 2005)).  "[B]road discretion is vested in the trial court to permit or deny discovery."  *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

II.   DISCUSSION

Plaintiffs seek to compel responses to multiple discovery requests.  Docket No. 42 at 7, 10, 12-14.  Many of these discovery requests overlap with one or multiple other of Plaintiffs' discovery requests.  The discovery requests can be divided into 3 categories: (1) Plaintiffs' credit reports and related information; (2) the Consumer Data Industry Association Metro 2 Credit Reporting Resource Guide that was operative at the time they submitted their dispute letters; and (3) the identification of cases, deposition transcripts, declarations, and court filings relating to Defendant's post-bankruptcy discharge reporting and the *White v. Experian* settlement.  *Id.*  Given the discovery requests' overlapping nature, the Court will address the categories of information sought, rather than each individual discovery request.

1.    Plaintiffs' credit information

Plaintiffs ask the Court to compel the production of various portions of their credit information maintained by Defendant.  Defendant primarily archives copies of transmitted credit reports in the "Fixed File Inquiry" ("FFI") and "Fixed File Return" ("FFR") formats.  *Id.* at 9. Plaintiffs are seeking all FFIs/FFRs pertaining to them transmitted by Defendant since 30 days after Plaintiffs first sent their respective demand letters, as well as identification of any unarchived

transmitted credit reports and any "soft inquiries" for the same time period.[2] *Id.* at 10. Plaintiffs further seek to compel Defendant to identify the type of credit reporting product attributable to each FFI/FFR. *Id.*

Defendant submits that producing every FFI/FFR for each Plaintiff during the relevant time period would be cumulative and disproportionately burdensome.[3] Docket No. 47 at 7-8. Defendant submits that producing every relevant FFI/FFR would be cumulative because it has already produced two representative FFIs/FFRs for each plaintiff. *Id.* Plaintiffs submit that complete production of the relevant FFIs/FFRs would not be cumulative because each FFI/FFR is needed to fully evaluate Plaintiffs' damages. Docket No. 42 at 17. Plaintiffs further submit that relying on Defendant's representative FFIs/FFRs would allow Defendant to pick and choose what evidence it produces. Docket No. 50 at 6-8. Absent a protective order, a party must produce all documents responsive to a request for production that are in the party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1); *see also* Fed. R. Civ. P. 26(c). Further, each FFI/FFR may contain new information relevant to Plaintiffs' damages. Producing each FFI/FFR for Plaintiffs during the relevant time period is, therefore, not cumulative.

Defendant further submits that this request is overly burdensome because "collecting FFIs/FFRs is a manual, multi-step process which requires individualized research into a specific consumer and specific inquiry" and that "[l]ocating and producing each of these FFIs/FFRs would take a significant number of resources and time which would be disproportionate to the needs of this case." Docket No. 47 at 8. Defendant does not articulate why obtaining each FFI/FFR would be disproportionately burdensome beyond this generalized statement. Conclusory or generalized assertions are not enough to support a claim that sought discovery is disproportionately burdensome. *See V5 Techs.*, 334 F.R.D. at 309 (citing *AMG Servs., Inc.*, 291 F.R.D. at 553).

---

[2] More specifically, "[t]he relevant time period for this request are [Plaintiff] Bagnate's inquiries after January 9, 2022; [Plaintiff] Brewster's inquiries after [] January 20, 2022; and [Plaintiff] Wade's inquiries after January 29, 2022." Docket No. 42 at 16.

[3] Defendant, by producing two FFIs/FFRs for each Plaintiff, has conceded the relevancy of the FFIs/FFRs. *See* Docket Nos. 42 at 16-17; 47 at 7.

3

Plaintiffs further seek the identification of the applicable credit reporting product for each produced FFI/FFR. Docket No. 42 at 18. Plaintiffs submit this information is relevant and necessary because, although they have a copy of Defendant's User Guide which is necessary to decode the FFIs/FFRs, the User Guide contains decoding instructions for multiple different credit reporting products. *Id.* Consequently, Plaintiffs cannot know which instructions to follow for any particular FFI/FFR, rendering any produced FFIs/FFRs useless. Defendant submits that Plaintiffs' request for the applicable credit reporting products "is emblematic of a prohibited fishing expedition." Docket No. 47 at 9. It submits that, because Defendant alleges that it never discloses balances of discharged accounts, the applicable credit reporting information is irrelevant to the instant case.

As discussed above, the contents of each FFI/FFR are relevant to either party's claims or defenses. Moreover, Federal Rule of Civil Procedure 34(a)(1)(A) requires that produced discovery be provided in a "reasonably usable form." *See also* Fed. R. Civ. P. 34(b)(2)(E) (providing further requirements for producing electronically stored information). Indeed, the drafters of Rule 34 contemplated that a responding party may have to go beyond the face of the request for production to ensure produced discovery is usable. Fed. R. Civ. P. 34, Advisory Committee Notes (2006) ("Under some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information"). Accordingly, Defendant must identify the credit reporting product applicable to each produced FFI/FFR.

Plaintiffs further seek to compel the production of any "soft inquiries" into their credit report and the identification of any inquiries that were not archived. Docket No. 42 at 17-18. Defendant does not challenge the relevancy of this category of discovery. *See* Docket No. 47 at 7-8. Defendant submits, however, that this request is cumulative of the other discovery requests relating to Plaintiffs' credit reports. Docket No. 47 at 7-8. As discussed above, the contents of every one of Plaintiffs' credit reports disclosed to third parties is relevant to the action. Accordingly, production of "soft inquiries" into Plaintiffs' credit history is not cumulative.

Defendant makes one passing comment that Plaintiffs are seeking "undefined records of 'soft inquiries.'" Docket No. 47 at 8. Plaintiffs use the term "soft inquiry" in relation to how the term is used in Defendant's User Guide. *See* Docket No. 42 at 17. "[E]pistomolgical nit-picking" is not a valid reason to avoid discovery. *Alvarado-Herrera v. Acuity*, 2022 WL 18108429, at *2 (D. Nev. Nov. 8, 2022) (citing *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 580 (9th Cir. 1992), and *F.D.I.C. v. Lewis*, 2014 WL 7330931, at *4 (D. Nev. Dec. 18, 2014)). Further, conclusory arguments are insufficient to avoid discovery. *See V5 Techs.*, 334 F.R.D. at 309 (citing *AMG Servs., Inc.*, 291 F.R.D. at 553). Because Plaintiffs use the term "soft inquiries" in reference to a document drafted by Defendant, Defendant cannot avoid this discovery on vagueness grounds. Accordingly, Defendant must produce every "soft inquiry" for Plaintiffs from the relevant time period. Additionally, to the extent it can identify such transmission, Defendant must identify any transmissions made during the relevant time period for which it does not have full archival information. This discovery is relevant to Plaintiffs' damages and whether Defendant destroyed evidence of its transmittal of inaccurate post-bankruptcy discharge account information to third parties.

2.    Metro 2 Guidelines

Plaintiffs seek to compel the production of the Metro 2 Credit Reporting Resource Guide that was operative at the time they submitted their dispute letters ("Metro 2 guidelines" or "guidelines"). Docket No. 42 at 18-19. The Metro 2 guidelines are maintained by the Consumer Data Industry Association and are an industry standard for transmitting consumer credit data. *Id.* at 18. Defendant contributed to the Metro 2 guidelines along with other credit reporting agencies and stakeholders in the consumer credit reporting industry. *Id.* Plaintiffs submit that Defendant must produce the Metro 2 guidelines because they are necessary to determine whether Defendant's reinvestigation was reasonable under the FCRA and to refute portions of Defendant's threatened Rule 11 motion. Docket No. 42 at 18-19. Defendant submits that it should not be compelled to produce the Metro 2 guidelines because they are not relevant, Plaintiffs already possess a copy of the Metro 2 guidelines, and the guidelines are not in Defendant's possession and control because only the Consumer Data Industry Association, not Defendant, has the authority to disclose the

5

1   guidelines. Docket No. 47 at 9. Plaintiffs reply that the copy of the Metro 2 guidelines in their

2   possession predates their dispute letters and alleged inaccurate reports and is therefore not the

3   operative copy of the guidelines for their claims. Docket No. 50 at 9-10. Plaintiffs further submit

4   that the guidelines are routinely produced in other lawsuits. Docket Nos. 42 at 18; 50 at 10.

5         Plaintiffs submit that the Metro 2 guidelines are relevant to their claim that Defendant

6   failed to reasonably reinvestigate their credit report disputes and to respond to Defendant's Rule

7   11 letter. Docket No. 42 at 18-19. Defendant does not dispute this submission. *See* Docket No.

8   47. Defendant instead submits that the guidelines are irrelevant because it "has produced the actual

9   data transmitted in a credit report to third parties which shows that no balances were reported." *Id.*

10   at 9 (emphasis omitted). Whether the balances reported by Defendant were accurate is an issue

11   not now before the Court. What is before the Court is whether the Metro 2 guidelines are "relevant

12   to any claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

13   Plaintiffs' complaint claims that Defendant failed to reasonably reinvestigate their disputed credit

14   reports. Docket No. 19 at 15-16. The Metro 2 guidelines are, therefore, relevant to either parties'

15   claims or defenses and cannot be withheld on relevancy grounds.

16         Defendant submits that the Metro 2 guidelines are maintained by the Consumer Data

17   Industry Association and that only the association can grant access to the guidelines. Docket Nos.

18   42-12 at 2-3; 42-14 at 1; 47 at 9. To support this contention, Defendant references the fact that

19   "the CDIA website clearly states that only approved individuals can access the guidelines."

20   Docket No. 47 at 9. Defendant, however, provides no further support for the submission that only

21   the Consumer Data Industry Association can produce the guidelines in relation to a lawsuit. Had

22   Defendant provided a confidentiality agreement outlining the consequences it would face for

23   producing the guidelines in response to a court order or subpoena, the Court might be able to

24   analyze the burden Defendant could face in producing the guidelines. Absent that, the Court is

25   left with the fact that the guidelines have been produced under seal in other cases in this District.

26   *See* Docket No. 42 at 19; 42-13 at 3. In light of this, Defendant has failed to meet the high standard

27   needed to show why relevant discovery should be avoided.

28

Moreover, a party responding to a request for production must produce any responsive documents within the "party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The case law "clearly provides that documents are deemed to be within the possession, custody or control of a party and subject to a request for production if the party has actual possession, custody or control or has the legal right to obtain the documents on demand." *Apple Inc. v. Wi-LAN Inc.*, 2017 WL 11680855, at *4 (S.D. Cal. Nov. 28, 2017) (quoting *TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co.*, 2017 WL 1008788, at *4 (S.D. Cal. Mar. 17, 2017)). Defendant, as a user of the Metro 2 guidelines, by necessity must have the guidelines in its custody or producible to it on demand. The Metro 2 guidelines are, therefore, discoverable under Rule 34.

Defendant has suggested that Plaintiff can obtain the Metro 2 Guideline by subpoenaing the Consumer Data Industry Association. Docket No. 42-14 at 2. This suggestion is without merit. "As a party to this case, case law dictates that [Defendant] bear the burden of production, rather than a third party." *Id.* (quoting *VirnetX, Inc. v. Apple Inc.*, 2014 WL 6979427, at *4 (N.D. Cal. Mar. 21, 2014)). Defendant further submits that it need not produce the Metro 2 guidelines because Plaintiffs already possess the guidelines. Docket No. 47 at 9. Plaintiffs, however, possess a copy of the guidelines that predates their dispute letters. Docket No. 50 at 9. What Plaintiffs seek to compel are the guidelines that were operative at the time they submitted their dispute letters. Docket Nos. 42 at 18-19; 50 at 9-10. Plaintiffs, therefore, do not possess the iteration of the Metro 2 guidelines they seek from Defendant. Defendant must, therefore, produce the copy of the Metro 2 guidelines that was operative at the time Plaintiffs submitted their dispute letters to Defendant.

3.   Identification of cases, deposition transcripts, and declarations relating to Defendant's post-bankruptcy reporting and the *White v. Experian* settlement

Plaintiffs further seek to compel Defendant to identify and produce any deposition transcripts, testimony, or declarations of Defendant's representative Mr. Orlowski. Docket No. 42 at 20-21. Plaintiffs also seek to compel Defendants to identify and produce any briefs or communications regarding a settlement Defendant agreed to in the case *White v. Experian*. *Id.* at 21-23. The Court declines to compel Defendant to identify or produce these categories of discovery.

As an initial matter, Plaintiffs' claims are not based around any collective action theory. Each claim is particular to each plaintiff. Given that each case presents a distinct set of facts from any other case, Mr. Orlowski's or Defendant's testimony, briefs, or communications relating to other cases cannot be relevant to Plaintiffs' claims. *See Turner v. The Paul Revere Life Ins. Co.*, No. 2:14-cv-1205-JCM-VCF, 2015 WL 5097805, at *2 (D. Nev. Aug. 28, 2015).

Plaintiffs submit, however, that these categories of discovery are necessary to respond to Defendant's forthcoming Rule 11 motion. Docket No. 42 at 20-23. To support this assertion, Plaintiffs cite to other cases where Mr. Orlowski or Defendant offered testimony or adopted a legal position that contradicts the representations made in this case. *See id.* These citations, however, show that these categories of discovery requests are duplicative. Plaintiffs already possess documents and authorities that contain the information they hope to glean from these categories of discovery. Accordingly, Defendant need not identify and produce any deposition transcripts, testimony, or declarations of Defendant's representative Mr. Orlowski or identify and produce any briefs or communications regarding a settlement Defendant agreed to in the case *White v. Experian*.

## III.    MOTION TO SEAL

Plaintiffs seek to seal Exhibits 7A, 7B, 7C, 8B, 9, 10, 11A, 11B, and 11C to their motion to compel. Docket No. 44 at 2-3. *See also* Docket Nos. 42 (motion to compel); 43 (exhibits filed under seal). Plaintiffs submit that Exhibits 7A, 7B, 7C, and 8B contain Plaintiffs' confidential financial and personal identifying information. Docket No. 44 at 3. Plaintiff submits that Exhibits 9, 10, 11A, 11B, and 11C have been designated as "Confidential" by Defendant. *Id.* Plaintiffs do not oppose the sealing of Exhibits 9, 11A, 11B, and 11C. *Id.* Notwithstanding their submission for why Exhibit 10 should be sealed, Plaintiffs oppose the sealing of this exhibit. *Id.* Plaintiffs submit that Exhibit 10 should be unsealed because it contains information similar to documents which have been publicly filed in other cases and because there is a public interest in having the contents of Exhibit 10 accessible to consumers. *Id.* at 3-5. Pursuant to this Court's orders, Docket Nos. 17 at 2; 45, Defendant filed a response to Plaintiffs' motion to seal, explaining why Exhibits 9, 10, 11A, 11B, and 11C are properly sealed. Docket No. 48. Defendant submits that Exhibits 11A, 11B, and 11C are properly sealed because they contain Plaintiffs' confidential financial and

personal identifying information as well as Defendant's trade secrets. *Id.* at 8. Defendant further submits that Exhibits 9 and 10 are properly sealed because they contain Defendant's confidential business information, the public disclosure of which would harm Defendant's competitive standing. *Id.* at 4-7.

The general presumption is that the public has the right to access judicial filings. *See, e.g.*, *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 (1978). Certain types of documents are exempt from this presumption and have traditionally been kept secret. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Ninth Circuit "case law has identified two categories of documents that fall in this category: grand jury transcripts and warrant materials in the midst of a pre-indictment investigation." *Id.* The presumption of public access can, however, be overcome for documents not traditionally kept secret. *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999).

In determining whether to seal documents, the applicable standard "turns on whether the materials are submitted in conjunction with a dispositive or non-dispositive motion." *Victory Sports & Ent., Inc. v. Pedraza*, 2019 WL 2578767, *1 (D. Nev. June 24, 2019). The sealing of dispositive motions and related documents is evaluated under a "compelling reasons" standard. *Kamakana*, 447 F.3d at 1179. *Id.* A party must support its motion to seal dispositive filings by "articulat[ing] compelling reasons supported by specific factual findings." *Id.* at 1178. Sealing nondispositive motions requires a "particularized showing" under a "good cause" standard. *Id.* at 1180 (citing *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1138 (9th Cir. 2003).

Exhibits 7A, 7B, and 7C are Plaintiffs' credit reports. Exhibit 8B is a set of credit denial letters from Plaintiff Kamaliha Brewster. These exhibits contain Plaintiffs' financial and personal identifying information. The Court finds that these exhibits are, therefore, subject to sealing. *See* Fed. R. Civ. P. 5.2. Exhibits 11A, 11B, and 11C are FFIs/FFRs for Plaintiffs. Though these exhibits are difficult to interpret, they also contain Plaintiffs' confidential financial and personal identifying information. Accordingly, the Court finds that good cause exists to seal Exhibits 11A, 11B, and 11C. Exhibit 9 is Defendant's Consumer Dispute and Disclosure policies. Defendant submits that public disclosure of this exhibit would allow its competitors to profit from its

confidential internal procedures and innovations and could potentially enable third parties to manipulate the credit reporting process. Docket No. 48 at 4-5. The Court is persuaded that the public disclosure of Exhibit 9 "could lead to an improper use by competitors, 'circumvent[ing] the time and resources necessary in developing [the competitor's] own practices and strategies.'" *Baker v. SeaWorld Entm't, Inc.*, 2017 WL 5029612, at *5 (S.D. Cal. Nov. 3, 2017) (quoting *Algarin v. Maybelline, LLC*, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014)); *see also Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598) ("In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets"). Accordingly, the Court finds that good cause exists to retain Exhibit 9 under seal.

Exhibit 10 is Defendant's User Guide, containing information on how to decode Defendant's FFIs/FFRs. Plaintiffs submit that Exhibit 10 should be unsealed because a similar document from one of Defendant's competitors has already been placed in the public record in another case. Docket No. 44 at 3. Plaintiffs further submit that Exhibit 10 should be unsealed because it contains information of vital public interest. *Id.* at 3-5. Defendant submits that a similar document being publicly disclosed in another case does not support unsealing Exhibit 10 because the broader context of the other document's public disclosure is not known. Docket No. 48 at 7. Defendant further submits that Exhibit 10 should be sealed because its public disclosure could harm Defendant's competitive standing and enable bad actors to manipulate the credit reporting system. *Id.* at 6-7.

If a court determines that a particularized harm will result from documents being publicly disclosed, the court must then "balance the public and private interests to decide whether" to seal the relevant documents. *In re Roman Catholic Archbishop of Portland in Ore.*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Phillips ex rel. Estate of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). Factors to be considered in this balancing process are:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4)

10

whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Id.* at n.5 (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 93d Cir. 1995)). It is the last factor that is the most relevant here. As discussed above, harm to competitive standing is a particularized harm sufficient to support the sealing of documents. Exhibit 10, Defendant's User Guide, is a highly technical document. It is unlikely that the average individual would parse through all 1700 pages of the User Guide to make the exhibit's public disclosure meaningful. Moreover, the User Guide is for interpreting FFIs/FFRs, which are only transmitted between Defendant and prospective credit grantors. *See* Docket No. 48 at 7. This further reduces the benefit that public disclosure of Exhibit 10 might provide. Accordingly, the Court finds that good cause exists to seal Exhibit 10.

## III. CONCLUSION

For the reasons more fully discussed above, Plaintiffs' motion to compel is **GRANTED** in part and **DENIED** in part.[4] Docket No. 42. Defendant must produce the requested documents in accordance with this order no later than July 31, 2023. Also for the reasons more fully discussed above, Plaintiffs' motion to seal is **GRANTED**. Docket No. 44. The Clerk's Office is **INSTRUCTED** to retain the filing at Docket No. 43 under seal.

IT IS SO ORDERED.

Dated: July 11, 2023

Nancy J. Koppe
United States Magistrate Judge

---

[4] The Court declines to award either side their fees or costs in relation to this motion.

EXHIBIT 9

🅰 Neutral
As of: January 21, 2025 6:55 PM Z

# *Childers v. Rent-A-Car E., Inc.*

United States District Court for the Eastern District of Louisiana

March 11, 2024, Decided; March 11, 2024, Filed

CIVIL ACTION NO. 21-960 SECTION "G" (2)

**Reporter**

2024 U.S. Dist. LEXIS 41841 *; 2024 WL 1050501

CYNTHIA CHILDERS VERSUS RENT-A-CAR EAST, INC., ET AL.

**Prior History:** *Childers v. Rent-A-Center East, Inc., 2021 U.S. Dist. LEXIS 143602, 2021 WL 3286462 (E.D. La., July 30, 2021)*

## Core Terms

documents, objects, discovery, consumer, Requests, request for production, responses, confidential, proportional, trade secret information, constitutes, proprietary, scans, Log, speculate, frozen, provide information, grounds, parties, vague, joint defense, attorney-client, proportionality, computerized, privileges, ambiguous, disputes, withheld, sufficient particularity, fail to identify

**Counsel:** [*1] For Cynthia Childers, Plaintiff: Marc R. Michaud, LEAD ATTORNEY, Michaud Consumer Law, LLC, Louisiana, New Orleans, LA.

For Trans Union LLC, Defendant: George Davidson Fagan, LEAD ATTORNEY, Leake & Andersson, LLP (New Orleans), Energy Centre, New Orleans, LA; Karen E Futch, Leake & Andersson, New Orleans, LA; Liliana Verenice Sanchez, PRO HAC VICE, Quilling Selander Lownds Winslett Moser, Plano, TX.

For Experian Information Solutions, Inc., Defendant: Julie Moffett McCall, LEAD ATTORNEY, Butler Snow, LA, Baton Rouge, LA; Grant Schnell, PRO HAC VICE, Jones Day - Atlanta, Atlanta, GA.

For Equifax Information Services LLC, Defendant: Madison M. Tucker, LEAD ATTORNEY, Jones Walker (New Orleans), Place St. Charles, New Orleans, LA; Alice Hodsden, PRO HAC VICE, Seyfarth Shaw LLP, Los Angeles, CA.

**Judges:** DONNA PHILLIPS CURRAULT, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** DONNA PHILLIPS CURRAULT

## Opinion

### <u>ORDER AND REASONS</u>

Pending before me is Plaintiff Cynthia Childers' Motion to Compel Discovery Responses from Defendants Trans Union, LLC and Equifax Information Services, LLC ("Equifax"). ECF No. 89. Trans Union and Plaintiff timely filed Opposition and Reply Memoranda. ECF No. 93-94. On March 4, 2024, Plaintiff filed a Notice [*2] of Settlement with Equifax. ECF No. 92. No party requested oral argument, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiff's Motion to Compel (ECF No. 89) is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

Case 3:24-cv-00038-AJB-BLM    Document 27-1    Filed 01/21/25    PageID.362    Page 90 of 99

Page 2 of 11
2024 U.S. Dist. LEXIS 41841, *2

# I. BACKGROUND

Plaintiff Cynthia Childers filed suit against, among others, Experian Information Solutions, Inc., Trans Union, LLC, and Equifax Information Services, LLC (collectively, the "credit bureaus") under the Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA), and Louisiana's Unfair Trade Practices Act for damages allegedly sustained after the credit bureaus refused to remove an erroneous entry associated with identity theft from Plaintiff's credit report. ECF Nos. 1, 67. Plaintiff now seeks to compel full and complete discovery responses to Requests for Production Nos. 10-19 from Equifax and Trans Union, both of whom allegedly promised to produce the information but failed to do so. ECF No. 89. Plaintiff argues that the documents are necessary for her expert to prepare his report, which is due on March 22, 2024, and because she needs "to discover what **[\*3]** each defendant actually did when it received the various disputes in this case." *Id.* at 2-4.

In Opposition, Trans Union argues that the motion should be denied because it has already produced the requested information and Plaintiff failed to meet and confer about Requests Nos. 10-19 specifically. ECF No. 93. Trans Union alleges that Plaintiff requested "Data Views, and/or name scans, and/or frozen scans" for the first time during the parties' February 7, 2024 *Rule 37* conference but such information is unnecessary because Trans Union's production clearly demonstrates the steps it took in response to Plaintiff's disputes. *Id.* at 1-2. Accordingly, Trans Union argues, this new request seeks irrelevant information that would be "particularly burdensome" to produce. *Id.* at 2. On March 5, 2024, Trans Union also produced amended objections and responses to the document requests, which responses "further

communicated to Plaintiff that no such documents exist." *Id.* at 2-3. As such, Trans Union requests that the court deny Plaintiff's motion to compel irrelevant, unreasonably cumulative, and duplicative information. *Id.* at 6-7.

In Reply, Plaintiff argues that Trans Union is playing the "Name Game" by **[\*4]** alleging it does not have "name scans," "frozen scans," or "data views" because Trans Union no longer calls its monthly snapshots of a consumer's credit history by those names, although it still maintains such procedures or systems. ECF No. 94. Plaintiff contends that, while Trans Union has produced the results of its reinvestigations, Plaintiff seeks information about the steps Trans Union took, the information it reviewed, and the correspondence or reports generated in order to obtain those results. *Id.* at 2-3. Plaintiff insists that Trans Union maintains, and she is entitled to information from, "some database, file, procedure or system" in which it keeps relevant information regarding a given consumer and her disputes, including the requested information regarding its reinvestigation of Plaintiff's disputes, if any, and Trans Union's proportionality objection regarding production of same is without merit. *Id.* at 4.

# II. APPLICABLE LAW

## A. *Rule 37*'s Meet and Confer Requirement

In connection with a discovery motion, *Rule 37(a)(1) of the Federal Rules of Civil Procedure* requires:

> The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery **[\*5]** in an effort to obtain it

2024 U.S. Dist. LEXIS 41841, *5

without court action.

To ensure compliance with this Rule, this Court expressly requires the parties to provide detailed information in the required *Rule 37* certification.[1] These instructions further direct that the "meet and confer [must be] either in person or by telephone, not simply via email exchange."[2] Although Plaintiff's counsel attached an affidavit reflecting that he conferred with counsel for Trans Union on February 7, 2024, Plaintiff's certification fails to set forth the specific, detailed information required by this Court.[3]

Further, Trans Union argues that the parties did not discuss Requests Nos. 10-19 in their February 7, 2024 phone call. The failure to engage in a fulsome meet and confer on each disputed response prior to filing a discovery motion constitutes sufficient reason in itself to deny the motion.[4] However, in the interests of expediency and judicial economy, the court will address the merits of this motion.

## B. Scope of Discovery

Under *Rule 26*, "[p]arties may obtain discovery regarding any nonprivileged matter that is **[\*6]**

relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." *Fed. R. Civ. P. 26(b)(1)*.

*Rule 26*'s advisory committee comments make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." *Fed. R. Civ. P. 26* advisory committee's notes to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope **[\*7]** of discovery." *Id.*

## C. Duty to Respond to Discovery

A party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and explain whether any responsive information or documents have been withheld.[5]

---

[1] *Motions & Oral Argument, The Honorable Donna Phillips Currault*, United States District Court Eastern District of Louisiana, http://www.laed.uscourts.gov/judges-information/judge/honorable-donna-phillips-currault (last visited March 8, 2024).

[2] *Id.*

[3] *See* ECF No. 89-2.

[4] *Shaw Grp. Inc. v. Zurich Am. Ins. Co., No. 12-257, 2014 U.S. Dist. LEXIS 122514, 2014 WL 4373197, at \*3 (M.D. La. Sept. 3, 2014)* (stating the *Rule 37* certification is a prerequisite); *see also Greer v. Bramhall, 77 F. App'x 254, 255 (5th Cir. 2003)* (finding the district court did not abuse its discretion in denying motion to compel for failing to follow *Rule 37*); *D.H. Griffin Wrecking Co. Inc. v. 1031 Canal Dev., L.L.C., No. 20-1051, 2020 U.S. Dist. LEXIS 249500, 2020 WL 8265341, at \*3 (E.D. La. Apr. 16, 2020)* (citing cases).

[5] *Lopez v. Don Herring Ltd., 327 F.R.D. 567, 580 (N.D. Tex.*

2024 U.S. Dist. LEXIS 41841, *7

A party must provide full and complete responses to requests for production within thirty days after being served same unless otherwise stipulated or ordered. _Fed. R. Civ. P. 34(b)(2)(A)_. This production must occur "no later than the time for inspection specified in the request or another reasonable time specified in the response." _Fed. R. Civ. P. 26(a)(1)(A)(ii)_; _34(a)(1)_; _Fed. R. Civ. P. 34(b)(2)(B)_.[6] A party responding to discovery must produce responsive documents not only that are within that party's actual, physical possession, but also documents that are within the party's constructive possession, custody or control. _Fed. R. Civ. P. 26(a)(1)(A)(ii)_; _34(a)(1)_. For each request, the respondent must either state that the inspection or production will be permitted or state with specificity the grounds for objection, including the **[*8]** reason. _Fed. R. Civ. P. 34(b)(2)(B)_. If a party fails to produce documents, respond that inspection will be permitted, or permit inspection, the party seeking discovery may, on notice to other parties and certification that the parties participated in a _Rule 37_ conference in good faith, move for an order compelling an answer, designation, production, or inspection. _Fed. R. Civ. P. 37(a)_.

The Federal Rules of Civil Procedure take a "demanding attitude toward objections,"[7] and courts have long interpreted the rules to prohibit general, boilerplate objections.[8] When a party objects to a request for production, the "objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."[9] Objections interposed without also indicating whether any document or information is being withheld are improper.[10] Responses must also clearly state whether any responsive materials are being withheld and the specific basis for objecting and not producing same.[11] Further, it is improper for parties responding to discovery to provide responses with the caveat that they are given "subject to and without waiving" objections. Courts have repeatedly **[*9]** recognized that such language is improper and inconsistent with the Federal Rules.[12]

---

_Towing LLC, Nos. 13-2809, 12-3197, 2015 U.S. Dist. LEXIS 6931, 2015 WL 269051, at *3 (E.D. La. Jan. 21, 2015)_ (noting that an objection is boilerplate and insufficient "when it merely states the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request.") (citation omitted); _see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485-86 (5th Cir. 1990)_ (simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive" is inadequate to "voice a successful objection.") (citations omitted).

[9] _Fed. R. Civ. P. 34(b)(2)(C)_; _Orchestrate HR, Inc. v. Trombetta, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016)_, _objs. overruled sub nom. Orchestratehr, Inc. v. Trombetta, No. 13-2110, 2016 U.S. Dist. LEXIS 141627, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016)_.

[10] _See Chevron, 2015 U.S. Dist. LEXIS 6931, 2015 WL 269051 at *4_ (holding that objections fall short of party's burden when party objected based on privilege but failed to state whether any documents were withheld or the nature of withheld documents).

[11] _Id._ (citation omitted) ("Objections that fail to provide an appropriate basis make it difficult for the parties to even informally discuss any alleged defects in a discovery request or response in hope of fixing the defects.").

[12] _Heller v. City of Dallas, 303 F.R.D. 466, 486 (N.D. Tex. 2014)_ (citations omitted) ("The practice of asserting objections

---

_2018)_ (citation omitted).

[6] A party has "control" over documents or materials that it has the legal right to obtain even though it has no copy and even if the documents are owned or possessed by a nonparty. _Becnel v. Salas, No. 17-17965, 2018 U.S. Dist. LEXIS 17361, 2018 WL 691649, at *3 (E.D. La. Feb. 2, 2018)_ (citations omitted); _Monroe's Estate v. Bottle Rock Power Corp., No. 03-2682, 2004 U.S. Dist. LEXIS 5737, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004)_ (citation omitted).

[7] 8B Charles Wright & Arthur Miller, _Federal Practice and Procedure: Civil_ § 2173 (3d ed. 2021).

[8] _See, e.g._, _Chevron Midstream Pipelines LLC v. Settoon_

2024 U.S. Dist. LEXIS 41841, *9

## III. ANALYSIS

Considering Plaintiff's March 4, 2024 Notice of Settlement with Equifax, the portion of her motion seeking to compel responses from Equifax is moot. *See* ECF No. 92. The court, therefore, will address only Trans Union's responses to Plaintiff's Requests for Production Nos. 10-19.

## A. The Specific Requests and Responses

The particular requests at issue read:

**REQUEST FOR PRODUCTION NO. 10**: All computerized data relating to plaintiff or any reinvestigation regarding plaintiff.

**RESPONSE**: Trans Union refers Plaintiff to its documents produced and labeled TU 1-TU 169. Trans Union has limited its search for responsive documents and information to its consumer operations documents relating to Plaintiff from January 2021 to the date of the filing of this lawsuit. Trans Union objects to providing a further response to this Request on the grounds that "[a]ll computerized data" fails to identify the documents sought with sufficient particularity and is not proportional to the needs of the **[*10]** case. *FED. R. CIV. P. 26(b)(1)*, *34(b)(1)(A)*. Trans Union objects to the term "computerized data" as vague and undefined, leaving Trans Union to speculate as to the information Plaintiff is referencing or requesting. Trans Union objects to this Request as overly broad

and not reasonably limited in time or scope. Complying with this Request, as written, would require Trans Union to produce a multitude of irrelevant documents that are unrelated to the allegations and would create an undue burden and expense for Trans Union. *FED. R. CIV. P. 26(c)(1)*. Trans Union objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union or confidential information of third parties or other consumers. *FED. R. CIV. P. 26(c)*. Trans Union objects to this Request to the extent it seeks documents protected by the attorney-client, work product, and joint defense privileges. *FED. R. EVID. 502*; *FED. R. CIV. P. 26(b)*.

**REQUEST FOR PRODUCTION NO. 11**: All historical, archived or electronic record of any Metro Tape Data, which was the subject of a reinvestigation relating to plaintiff.

**RESPONSE**: Trans Union objects to this Request on the grounds that the phrase "Metro Tape Data" is vague, overly broad, and fails to identify the documents or information sought with sufficient **[*11]** particularity. *FED. R. CIV. P. 34(b)(1)(A)*. Trans Union objects to the term "Metro Tape Data" as vague and undefined, leaving Trans Union to speculate as to the information Plaintiff is referencing or requesting. Trans Union objects to this Request to the extent the documents sought are not relevant to the claims and defenses in this case and are not proportional to the needs of this case. *FED. R. CIV. P. 26(b)(1)*. Trans Union objects to this Request because "[a]ll historical, archived or electronic record of any Metro Tape Data" is overly broad in time and scope. Trans Union further objects to the extent this Request seeks

---

and then answering 'subject to' and/or 'without waiving' the objections-like the practice of including a stand-alone list of general or blanket objections that precede any responses to specific discovery requests-may have developed as a reflexive habit . . . [but the practice] 'manifestly confuses (at best) and mislead[s] (at worse), and has no basis at all in the Federal Rules of Civil Procedure.'").

information that constitutes confidential, proprietary, and trade secret information of Trans Union. *FED. R. CIV. P. 26(c)*. Trans Union further objects to this request to the extent it encompasses information protected by the attorney-client and joint defense privileges. *FED. R. CIV. P. 26(b)*; *FED. R. EVID. 502*.

**REQUEST FOR PRODUCTION NO. 12**: All ACIS documents relating to plaintiff.

**RESPONSE**: Trans Union objects to this Request to the extent it seeks documents that are not relevant to this case and are not proportional to the needs of the case. *FED. R. CIV. P. 26(b)(1)*. Trans Union objects to the phrase "ACIS documents" because it is undefined and ambiguous, leaving Trans Union to speculate as **[\*12]** to the meaning and the documents sought in this Request. Trans Union further objects to this Request because it is not reasonably limited in time or scope. Trans Union further objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union. *FED. R. CIV. P. 26(c)*.

**REQUEST FOR PRODUCTION NO. 13**: All ACRO documents relating to plaintiff.

**RESPONSE**: Trans Union objects to this Request to the extent it seeks documents that are not relevant to this case and are not proportional to the needs of the case. *FED. R. CIV. P. 26(b)(1)*. Trans Union objects to the phrase "ACRO documents" because its undefined and ambiguous, leaving Trans Union to speculate as to the meaning and the documents sought in this Request. Trans Union further objects to this Request because it is not reasonably limited in time or scope. Trans Union further objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union.

*FED. R. CIV. P. 26(c)*.

**REQUEST FOR PRODUCTION NO. 14**: All Log F reports and documents relating to plaintiff, including all inquiry information received and all reports or information provided.

**RESPONSE**: Trans Union objects to this Request to the extent it seeks documents **[\*13]** that are not relevant to this case and are not proportional to the needs of the case. *FED. R. CIV. P. 26(b)(1)*. Trans Union objects to the phrase "Log F reports and documents" because its undefined and ambiguous, leaving Trans Union to speculate as to the meaning and the documents sought in this Request. Trans Union further objects to this Request because it is not reasonably limited in time or scope. Trans Union further objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union. *FED. R. CIV. P. 26(c)*.

**REQUEST FOR PRODUCTION NO. 15**: All Frozen Scans related to plaintiff or plaintiff's identifying information for the past seven years.

**RESPONSE**: Trans Union has no responsive documents for this Request. Trans Union has limited its search for responsive documents and information to its consumer operations documents relating to Plaintiff from January 2021 to the date of the filing of this lawsuit. Trans Union objects to this Request to the extent it seeks documents that are not relevant to this case and are not proportional to the needs of the case. *FED. R. CIV. P. 26(b)(1)*. Trans Union objects to providing a further response to this Request on the grounds that it is vague and fails to identify **[\*14]** the documents sought with sufficient particularity. *FED. R. CIV. P.*

2024 U.S. Dist. LEXIS 41841, *14

34(b)(1)(A). Trans Union objects to the phrase "Frozen Scans" because its undefined and ambiguous, leaving Trans Union to speculate as to the meaning and the documents sought in this Request. Trans Union further objects to this Request because it is not reasonably limited in time or scope. Trans Union further objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union. *FED. R. CIV. P. 26(c)*. Trans Union also objects to this Request to the extent it seeks information protected by the attorney-client, joint defense, and work product privileges. *FED. R. EVID. 502*.

**REQUEST FOR PRODUCTION NO. 16**: All Frozen Scans for the past seven years related to any consumer whose file was mixed with plaintiff's file or whose information was placed in plaintiff's file at any time.

**RESPONSE**: Trans Union has no responsive documents to this Requests. Trans Union has limited its search for responsive documents and information to its consumer operations documents relating to Plaintiff from January 2021 to the date of the filing of this lawsuit. Trans Union objects to this Request to the extent it seeks documents that are not relevant to this case **[*15]** and are not proportional to the needs of the case. *FED. R. CIV. P. 26(b)(1)*. Trans Union objects to providing a further response to this Request on the grounds that it is vague and fails to identify the documents sought with sufficient particularity. *FED. R. CIV. P. 34(b)(1)(A)*. Complying with this Request, as written, would require Trans Union to produce a multitude of irrelevant documents unrelated to the allegations and would create an undue burden and expense for Trans Union. *FED. R. CIV. P. 26(c)(1)*.

Trans Union objects to the phrase "Frozen Scans" because its undefined and ambiguous, leaving Trans Union to speculate as to the meaning and the documents sought in this Request. Trans Union further objects to this Request because it is not reasonably limited in time or scope. Plaintiff's Request is not limited to information that is relevant to the claims or defenses of any party and is not proportional to the needs of the case as Plaintiff's Request seeks documents far beyond the allegations, time period, and scope of Plaintiff's Complaint. *FED. R. CIV. P. 26(b)(1)*. Trans Union further objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union. *FED. R. CIV. P. 26(c)*. Trans Union also objects to this Request to the extent it seeks information **[*16]** protected by the attorney-client, joint defense, and work product privileges. *FED. R. EVID. 502*.

**REQUEST FOR PRODUCTION NO. 17**: All online combine logs concerning plaintiff.

**RESPONSE**: Trans Union objects to this Request to the extent it seeks documents that are not relevant to this case and are not proportional to the needs of the case. *FED. R. CIV. P. 26(b)(1)*. Trans Union objects to providing a further response to this Request on the grounds that it is vague and fails to identify the documents sought with sufficient particularity. *FED. R. CIV. P. 34(b)(1)(A)*. Trans Union objects to the phrase "online combine logs" because its undefined and ambiguous, leaving Trans Union to speculate as to the meaning and the documents sought in this Request. Trans Union further objects to this Request because it is not reasonably limited in time or scope. Trans Union further objects to providing information that constitutes confidential, proprietary, and

2024 U.S. Dist. LEXIS 41841, *16

trade secret information of Trans Union. *FED. R. CIV. P. 26(c)*. Trans Union also objects to this Request to the extent it seeks information protected by the attorney-client, joint defense, and work product privileges. *FED. R. EVID. 502*.

**REQUEST FOR PRODUCTION NO. 18**:
All terminal audit trails concerning plaintiff.

**RESPONSE**: Trans Union refers Plaintiff to **[\*17]** its documents produced and labeled TU 1-TU 169. Trans Union has limited its search for responsive documents and information to its consumer operations documents relating to Plaintiff from January 2021 to the date of the filing of this lawsuit. Trans Union objects to this Request to the extent it seeks documents that are not relevant to this case and are not proportional to the needs of the case. *FED. R. CIV. P. 26(b)(1)*. Trans Union objects to the phrase "terminal audit trails" because it is undefined and ambiguous, leaving Trans Union to speculate as to the meaning and the documents sought in this Request. Trans Union further objects to this Request because it is not reasonably limited in time or scope. Trans Union further objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union. *FED. R. CIV. P. 26(c)*. Trans Union also objects to this Request to the extent it seeks information protected by the attorney-client, joint defense and work product privileges. *FED. R. EVID. 502*.

**REQUEST FOR PRODUCTION NO. 19**:
All documents relating to referrals sent to or received from another credit reporting agency regarding complaints received from plaintiff alleging identity theft, or requesting a fraud **[\*18]** alert or the blocking of information.

**RESPONSE**: Trans Union refers Plaintiff to

its documents produced and labeled TU 1-TU 169. Trans Union has limited its search for responsive documents and information to its consumer operations documents relating to Plaintiff from January 2021 to the date of the filing of this lawsuit. Trans Union objects to providing a broader response to this Request on the grounds that "[a]ll documents relating to referrals sent to or received" is vague and fails to identify the documents sought with sufficient particularity. *FED. R. CIV. P. 34(b)(1)(A)*. Plaintiff's Request is not limited to information that is relevant to the claims or defenses of any party and is not proportional to the needs of the case as Plaintiff's Request seeks documents far beyond the allegations, time period, and scope of Plaintiff's Complaint. *FED. R. CIV. P. 26(b)(1)*.

ECF No. 89-1 at 2-3.

**B. Analysis**

Trans Union asserts substantially similar objections throughout its responses. Trans Union's objection regarding the lack of temporal scope has merit. Plaintiff alleges that an account was improperly opened in her name on November 23, 2020, and the credit bureaus deleted the account on May 18, 2021, when Plaintiff filed this complaint. ECF **[\*19]** No. 67 ¶¶ 1, 17. Thus, the temporal scope of the Requests at issue (including Request Nos. 15 and 16, which sought 7 years' worth of data) must be limited to November 23, 2020 to May 18, 2021. Likewise, Trans Union's objection to the use of the term "all computerized data" as vague and undefined is appropriate. Transunion did, however, appear to understand the request because it produced documents in response to Request for Production No. 10. Trans Union must identify what "computerized data" it is has produced and identify any "computerized data" being

withheld based on the asserted objection, as required by *Fed. R. Civ. P. 34(b)(2)(C)*. Compliance with *Rule 34(b)(2)(C)* will enable Plaintiff to determine whether a request for any additional, specifically identified computerized data is necessary.

Trans Union's objections "to the extent" a discovery request seeks information that constitutes confidential, proprietary, and trade secret information of Trans Union or encompasses information protected by the attorney-client and joint defense privileges are and improper and thus overruled. Concerns regarding confidential, proprietary or trade secret information may readily be addressed through issuance of a protective order.[13] Any privilege [*20] objections must be asserted with specificity and accompanied by a proper privilege log, which does not appear to have been done here. Therefore, any documents withheld on the basis of confidentiality must be produced pursuant to a protective order and any documents withheld based on privilege must be identified on a privilege log within fourteen (14) days.

Trans Union's proportionality objections are unsubstantiated. Trans Union has not explained in any detail how obtaining and producing the requested data maintained in its electronic databases fails *Rule 26(b)*'s proportionality limitation. Further, Trans Union offers no information whatsoever as to the steps necessary to produce same, the time entailed or the costs associated with production. A party resisting discovery on grounds of proportionality bears the burden of making a specific objection and showing that the discovery fails *Rule 26(b)*'s proportionality calculation by coming forward with specific information to address the proportionality considerations.[14]

Plaintiff seeks "frozen scans, data views or viewers, which are basically monthly snap shots of a consumer's credit history with that respective [bureau]." ECF No. 94 [*21] at 2, In an effort to obtain the digital snapshot, Plaintiff issued Requests No. 10-19, which requests appear to seek the same information under different names. Indeed, Trans Union concedes that it understands the crux of Plaintiff's requests when it states that it does not have "data views" and, if it were to assume that Plaintiff was "confused" and meant to request documents that showed what was on Plaintiff's Trans Union credit file at a given time during and after Plaintiff's disputes, such a request would be unreasonably cumulative and duplicative of Trans Union's production. ECF No. 93 at 6.

Trans Union cannot avoid its discovery obligations by denying the existence of responsive information simply because it refers to that data by a different name nor can it refuse to interpret terms as commonly used. Indeed, *neither* party defined the numerous technical terms referenced in the discovery requests and briefs, but the terms must be interpreted according to their prevailing industry meaning:

• "Metro Tape Data" refers to the data that furnishers such as banks, credit unions, consumer credit companies, retailers, and auto finance companies, produce to credit reporting agencies on [*22] a regular basis.[15]

---

[13] A sample Protective Order is available on the undersigned's court webpage: https://www.laed.uscourts.gov/judges-information/judge/honorable-donna-phillips-currault (Last accessed Mar. 11, 2024).

[14] *Ictech-Bendeck v. Waste Connections Bayou, Inc., No. 18-7889, 2023 U.S. Dist. LEXIS 92390, 2023 WL 3687427, at *2 & n.25 (E.D. La. May 26, 2023)* (citing *Mir v. L-3 Commc'ns Integrated Sys., L.P., 319 F.R.D. 220, 226 (N.D. Tex. 2016)*), *on reconsideration in part, No. 18-7889, 2023 U.S. Dist. LEXIS 126645, 2023 WL 4706200 (E.D. La. July 24, 2023)*.

[15] *See* METRO 2® FORMAT FOR CREDIT REPORTING, Consumer Data Industry Association,

2024 U.S. Dist. LEXIS 41841, *22

• "Automated Consumer Interview System," (ACIS) is a network of applications and automated processes that handles consumer questions, concerns, and disputes regarding consumer credit data. For some credit bureaus, the ACIS network services an online dispute portal, a web application where consumers can dispute items appearing on their consumer credit reports and upload supporting documents, or a platform for credit freezes and fraud alerts.[16]

• "ACRO" appears to be Equifax's core online credit reporting database.[17]

• "Log F" reports contain copies of credit files pulled by a credit bureau when an inquiry is received about an individual.[18]

• "Online combine logs" appears to refer to documents reflecting that plaintiff's credit file was being mixed with someone else's credit file.[19]

• "Audit trail" is "a list of changes made by

---

https://www.cdiaonline.org/resources/furnishers-of-data-overview/metro2-information/ (last accessed Mar. 6, 2024).

[16] *Id.*

[17] *See Beseke v. Equifax Info. Servs., LLC, 420 F. Supp. 3d 885, 889 (D. Minn. 2019 ("Equifax*'s core online credit reporting database is called "ACRO," [which] includes encoded algorithms that automatically delete obsolete information at multiple stages. Equifax alleges that it relies on creditors to report accurate information including the date of first delinquency ("DOFD") and any collection activity, and determines obsolescence accordingly.") (record citations omitted).

[18] *See Indich v. Equifax Info. Servs.*, LLC, No. 16-2484, 2018 WL 19252584, at *4 n.8 (D. Colo. Mar. 6, 2018) (recounting expert testimony explaining that, "when [a credit] inquiry is received about an individual, Defendant pulls a credit file on that person, and from that file, several different products can be produced, depending on the inquirer's specifications. . . Defendant retained, and is in possession of, a copy of the credit file that was pulled, [which] document is called a "log f" or "log file.").

[19] *See Plaintiff's Motion to Compel Production from Defendant Trans Union LLC* in *Menegol v. Equifax Information Services, et al.,* No. 04-1741, 2005 WL 4133757 (W.D. Wash. July 18, 2005).

a consumer reporting agency to a consumer's credit history record, maintained to detect fraudulent changes to that record."[20]

Plaintiff defines "frozen scans" as monthly snap shots of a consumer's credit history with a given credit reporting agency.[21]

The identified information **[*23]** (e.g., the credit reporting data that Trans Union received from furnishers regarding the AcceptanceNow account, ACIS documents, ACRO (or similar documentation), Log F documents, "frozen scans" or monthly snapshots of Plaintiff's file, online combine logs concerning Plaintiff (or other documents reflecting a mixture of Plaintiff's credit file with another consumer's credit file), an audit trail for Plaintiff's credit file, and documentation regarding Plaintiff's reports of identity theft, fraud alerts or blocking concerning Plaintiff's account) is relevant to Plaintiff's claims.[22] Trans Union has not properly supported its proportionality objection. Indeed, given the Court's temporal limitation of November 23, 2020 through May 18, 2021, Trans Union appears to have largely satisfied Requests Nos. 10, 18 and 19. To the extent supplementation is required to comply with this order, same must be done within 14 days.

---

[20] *Brown v. Equifax Info. Servs., LLC. No. 09-168, 2010 U.S. Dist. LEXIS 162659, 2010 WL 1164703, at *14 (N.D. Ga. Feb. 16, 2010)* (citing 16 C.F.R. pt. 600, app. § 603).

[21] ECF No. 94 at 2.

[22] Other courts have reached the same conclusion. *See, e.g., Courtice v. Midland Credit Mgmt. Inc., No. 08-719, 2009 U.S. Dist. LEXIS 103676, 2009 WL 10708190, at *2 (D.N.M. May 5, 2009)* (compelling production of "name scans" which "show a snapshot of Plaintiff's credit at a particular time"); *Washington Mut. Bank v. Foster,* No. 06-622, 2008 WL 11351449, at *2 (M.D. La. June 27, 2008) (denying Trans Union's objection that production of "name scan" or "snap shot" documents would be overly burdensome, noting that, to support such an objection, the respondent must come forward with specific information, such as "estimates of the staff hours needed to comply" with the request in order to demonstrate that compliance is indeed overly burdensome).

2024 U.S. Dist. LEXIS 41841, *23

## IV. **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff's Motion to Compel Responses from Defendant Trans Union (ECF No. 89) is GRANTED IN PART AND DENIED IN PART as stated herein. Trans Union must supplement its responses within fourteen (14) **[*24]** days.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Responses from Defendant Equifax is DENIED AS MOOT given the parties' settlement.

New Orleans, Louisiana, this 11th day of March, 2024.

/s/ Donna Phillips Currault

DONNA PHILLIPS CURRAULT

UNITED STATES MAGISTRATE JUDGE

---

End of Document