1
2
3
4
5
6

7        UNITED STATES DISTRICT COURT

8        SOUTHERN DISTRICT OF CALIFORNIA

9

10   IVYSHANNE ACORIN,                          Case No.:   24CV38-AJB(BLM)

11                              Plaintiff,      **ORDER GRANTING IN PART AND
                                                DENYING IN PART PLAINTIFF'S
12   v.                                         MOTION TO COMPEL DEPOSITION OF
                                                DEFENDANT TRANS UNION**
13   TRANS UNION, LLC,

14                              Defendant.      **[ECF No. 27]**

15                                              **REDACTED**

16

17

18        Currently before the Court is Plaintiff's January 21, 2025 Motion to Compel Deposition of

19   Defendant Trans Union [ECF No. 27 ("MTC")] and Defendant Trans Union's January 28, 2025

20   opposition to the motion [ECF No. 28 ("Oppo.")].  For the reasons set forth below, Plaintiff's

21   motion is **GRANTED IN PART AND DENIED IN PART**.

22                          **DISCOVERY BACKGROUND**

23        Discovery opened in this matter on May 30, 2024  ECF No. 15.

24        On November 14, 2024, Plaintiff served a Notice of Trans Union's 30(b)(6) deposition for

25   January 3, 2025.  MTC at 7; see also ECF No. 27-1, Declaration of Stephanie Tatar in Support

26   of Plaintiff's Motion to Compel Deposition of Trans Union, ("Tatar Decl.") at ¶ 2, Exh. 1.

27        On November 19, 2024, Plaintiff served a new Notice of Trans Union's 30(b)(6) deposition

28   for January 8, 2025.  MTC at 7; see also Tatar Decl. at ¶ 7, Exh. 4; Oppo. at 7; see also ECF No.

28-1, Declaration of Ritika Singh ESQ In Support of Trans Union LLC's Response and Opposition to Plaintiff's Motion to Compel Deposition of Trans Union; Motion for Sanctions; and Motion for Protective Order ("Singh Decl.") at ¶ 6, Exhibit D.  The Notice contained twenty-six deposition topics.  Id.

On December 24, 2024, Trans Union served confidential documents regarding Trans Union's policies and procedures regarding consumer disputes and identity theft to Plaintiff. Oppo. at 7; see also Singh Decl., at ¶ 8, Exhibit F.

On December 26, 2024, Trans Union informed Plaintiff that its initially designated 30(b)(6) witness had a death in the family and alternative dates for Trans Union's 30(b)(6) deposition may be necessary.  Id.; see also Singh Decl., at ¶ 9, Exhibit G; Tatar Decl. at ¶ 9.

On January 2, 2025, Plaintiff's counsel responded that a stipulation would need to be filed with a new deposition date by January 3, 2025.  Id.; see also Singh Decl., at ¶ 10; Tatar Decl. at ¶ 10.  Trans Union responded that it could move forward with the deposition on January 8, 2025 and identified Andrew Montella as Trans Union's 30(b)(6) witness.  Singh Decl. at ¶ 10.

On January 6, 2025, Trans Union served Objections to Plaintiff's Notice of Deposition Topics and requested to meet and confer with Plaintiff.  Oppo. at 7; see also Singh Decl., at ¶ ¶ 11 and 13, Exhibit I; Tatar Decl. at ¶ 12, Exh. 5.  Plaintiff's counsel did not respond.  Oppo. at 7; see also Singh Decl., at ¶ ¶ 11, 13.

On January 8, 2025, Plaintiff deposed Trans Union's 30(b)(6) witness, Andrew Montella. Id. at 8; see also Singh Decl., at ¶ 14.  Afterwards, Plaintiff requested that Trans Union stipulate to extending the fact discovery cut off for a second 30(b)(6) witness deposition.  Id.; see also Singh Decl., at ¶ 15.  Trans Union declined.  Id.

On January 9, 2025, Plaintiff's counsel called counsel for Trans Union to meet and confer regarding sanctions for Trans Union's failure to present a witness at the 30(b)(6) deposition.  Id. at 8; see also Singh Decl., at ¶ 16.  Trans Union argued that they had presented a witness who was deposed and testified appropriately.  Id.   Later that day, Plaintiff's counsel served Plaintiff's conformed Ex Parte Application to Amend the Scheduling Order and Plaintiff's Request for Sanctions.  Id. at 9; see also Singh Decl., at ¶ 17, Exhibit J.

On January 13, 2025, the Court held a videoconference Mandatory Settlement Conference.  See ECF No. 50 in 24CV34-AJB(BLM).  After the conference, the Court discussed the instant dispute and informed Plaintiff's Counsel that the appropriate motion was a motion to compel and not a motion to amend the scheduling order.  The Court then issued a briefing schedule.  ECF No. 23.  In accordance with the briefing schedule, Plaintiff filed her motion on January 21, 2025 and Defendant filed its opposition on January 28, 2025.  MTC; see also Oppo.

## PLAINTIFF'S POSITION

Plaintiff seeks an order compelling "Trans Union to designate a corporate witness for testimony on sixteen topics crucial to establishing Trans Union's unreasonable and reckless investigation of Plaintiff's disputes."  MTC at 7.  Plaintiff argues that Trans Union failed to obtain a protective order, has waived its objections, and failed to appear for its 30(b)(6) deposition by sending a deponent who was inadequately prepared.  Id. at 10- 21.  Specifically, Plaintiff argues that Trans Union's last-minute objections to the 30(b)(6) deposition were procedurally improper and do not excuse its refusal to testify.  Id. at 11-12.  Additionally, Trans Union's failure to seek a protective order cannot be remedied without a showing of excusable neglect which does not apply here.  Id.  Plaintiff further argues that Trans Union's objections to the 30(b)(6) deposition were boilerplate and unsubstantiated.  Id. at 12.  Finally, Plaintiff argues that Trans Union's 30(b)(6) witness was so unprepared for the deposition, that it constitutes a failure to appear.  Id. at 17.  Accordingly, Plaintiff requests permission to file a motion for sanctions in the event the Court grants the instant motion.  Id. at 22-23.

## TRANS UNION'S POSITION

Trans Union contends that Plaintiff's motion should be denied because even after Plaintiff's refusal to meet and confer regarding deposition topics prior to the deposition, "Trans Union properly produced and Plaintiff's counsel deposed Trans Union's 30(b)(6) witness for approximately 6 hours." Oppo. at 6.  Additionally, Plaintiff refused to meet and confer prior to filing the instant motion as required by Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 30 and failed to include a statement pursuant to Fed. R. Civ. P. 37 that Plaintiff's counsel meaningfully conferred about the disputes raised in the instant motion.  Id. at 6, 10.  Trans Union notes that

24CV38-AJB(BLM)

it presented a 30(b)(6) witness who testified on all of the non-objectionable topics, it timely served its objections to the Notice of Deposition but instead of responding, Plaintiff opted to go forward with the deposition, and that the instant motion is Plaintiff's attempt to compensate for her lack of diligence as she had ample time "to obtain discoverable information through written discovery but failed to do so." Id. at 10-11.

Trans Union also contends that it has not waived its objections and was "not required to prepare a detailed privilege log until the parties [] conferred and the court [] ruled on Trans Union's objections to Plaintiff's Requests. Id. at 12. Finally, Trans Union contends that Plaintiff's request for sanctions is not warranted. Id. at 20-21. Trans Union seeks permission to file a motion for sanctions if Plaintiff's motion is denied. Id. at 21-22. Trans Union also seeks a protective order pursuant to Rule 26(c) as to deposition Topics 10, 13-17, and 23-26. Id. at 22-23.

## **LEGAL STANDARD**

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2)(c)(i-iii)(instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more

convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

Depositions

Fed. R. Civ. P. 30(a)(1) provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2).[1]" Fed. R. Civ. P. 30(a)(6) requires that a notice or subpoena directed towards an organization "describe with reasonable particularity the matters for examination" and "set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(a)(6) also requires that the organization "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf" and that "the serving party and the organization must confer in good faith about the matters for examination." "The persons designated must testify about information known or reasonably available to the organization." Id.

## DISCUSSION

**A.    Meet & Confer**

Trans Union contends that Plaintiff fails to address the fact that she failed to meet and confer before seeking court intervention as required by Fed. R. Civ. P. 30(b)(6). Oppo. at 10. This is evidenced by Plaintiff's failure to include a statement confirming that the parties met and conferred in good faith as required by Fed. R. Civ. P. 37. Id. at n1.

---

[1] Fed. R. Civ. P. 30(a)(2) states that "[a] party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2): (A) if the parties have not stipulated to the deposition and: (i) the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants; (ii) the deponent has already been deposed in the case; or (iii) the party seeks to take the deposition before the time specified in Rule 26(d), unless the party certifies in the notice, with supporting facts, that the deponent is expected to leave the United States and be unavailable for examination in this country after that time; or (B) if the deponent is confined in prison."

1   Plaintiff argues that Trans Union's decision to wait until January 6, 2025, two days before

2   the deposition to serve objections when it was aware of the deposition topics on November 14,

3   2024 did not leave the parties sufficient time to meet and confer.  MTC at 8.

4   Fed. Civ. P. 30(b)(6) states that "[b]efore or promptly after the notice or subpoena is

5   served, the serving party and the organization must confer in good faith about the matters for

6   examination."  Plaintiff served a new Notice of Trans Union's 30(b)(6) deposition on November

7   19, 2024. Oppo. at 7.   The notice contained 26 deposition topics.  Id.  Forty-eight days later,

8   two days before the deposition, on January 6, 2025, Trans Union served its objections to the

9   deposition topics and requested a meet and confer.  Id. at 7-8; Singh Decl. at ¶ 13.  Plaintiff's

10  counsel did not respond.  Id.  While the parties failed to meet and confer prior to the deposition

11  as required Fed. R. Civ. P. 30(b)(6), the Court finds that this is not a sufficient reason for denying

12  Plaintiff's motion.  Trans Union provides no explanation for waiting until the last minute to serve

13  its objections to the deposition topics and requesting a meet and confer.  Contrary to Trans

14  Union's statement that "Plaintiff's Motion fails to address a threshold issue: the parties must

15  meet and confer in good faith prior to seeking court intervention[,]"  Plaintiff did address the

16  issue by stating that due to the timing of Trans Union's request, "time did not permit to confer

17  on such short notice."  Oppo. at 10; MTC at 8.  The Court will not reward Trans Union's lack of

18  diligence in objecting and seeking a meet and confer by denying Plaintiff's motion on this ground.

19  Fed. R. Civ. P. 37(a)(1) states that "[o]n notice to other parties and all affected persons,

20  a party may move for an order compelling disclosure or discovery. The motion must include a

21  certification that the movant has in good faith conferred or attempted to confer with the person

22  or party failing to make disclosure or discovery in an effort to obtain it without court action."

23  The instant motion does not include the required certification, however, during the deposition

24  on January 8, 2025, the parties met and conferred on the record.  MTC at 10; Tatar Decl. at ¶

25  20.  Trans Union states that the meet and confer only addressed a potential stipulation to extend

26  the discovery cutoff that Trans Union rejected due to its objections to the deposition topics.

27  Opp. at 8; Singh Decl. at ¶ 15.  Plaintiff states that the meet and confer addressed Trans Union's

28  failure to obtain a protective order and the potential stipulation to extend the discovery cutoff.

24CV38-AJB(BLM)

1  Tatar Decl. at ¶¶ 20-22.  Accordingly, the Court will not reject the instant motion for its lack of

2  a meet and confer certification.

3  **B.    Trans Union's Objections**

4       Plaintiff argues that Trans Union has waived its objections to the deposition topics at

5  issue.  MTC at 12- 17.  Plaintiff argues that Trans Union's objections were boilerplate and

6  unsubstantiated and that without additional explanation or specificity, the objections are waived.

7  Id. at 12-13.  Plaintiff notes that Trans Union's behavior appears to be an attempt to "conceal[]

8  relevant information while running out the discovery clock."  Id. at 13.

9       Trans Union contends that it has not waived its objections because Plaintiff did not

10  attempt to meet and confer prior to filing the instant motion.  Oppo. at 12.

11       As an initial matter, the Court notes that Trans Union's objections to the discovery topics

12  were procedurally improper.  See Cancino Castellar v. McAleenan, 2020 WL 1332485, at *3 (S.D.

13  Cal., Mar. 23, 2020) (The "proper procedure to object to a Rule 30(b)(6) deposition notice is not

14  to serve objections on the opposing party, but to move for a protective order[,]") (quoting

15  Rembrandt Diagnostics, LP v. Innovacon, Inc., 2018 WL 692259, at *3 (S.D. Cal. Feb. 2, 2018)

16  ("A corporate deponent cannot simply make 'objections and then provide a witness that will

17  testify only within the scope of its objections. Unlike the procedure with respect to

18  interrogatories, requests for production of documents and requests for admissions, there is no

19  provision in the rules which provides for a party whose deposition is noticed to serve objections

20  so as to be able to avoid providing the requested discovery until an order compelling discovery

21  is issued.'") (quoting Beach Mart, Inc. v. L & L Wings, Inc., 302 F.R.D. 396, 406 (E.D.N.C. 2014)

22  and New England Carpenters Health Benefits Fund v. First Databank, Inc., 242 F.R.D. 164, 165-

23  66 (D. Mass. 2007)).  Trans Union failed to move for a protective order prior to the deposition

24  and, instead, served objections two days before the deposition.  Singh Decl. at ¶ 11. Given the

25  facts, including that the parties failed to meet and confer regarding Trans Union's objections

26  and Plaintiff deposed the Rule 30(b)(6) witness at length, the Court declines to find that Trans

27  Union has waived its objections.

28  ///

24CV38-AJB(BLM)

1. Topic 10

Topic 10 is "[t]he costs or expenses incurred by You in conducting each investigation into any dispute made by Plaintiff." Sing Decl. at Exh. H.  Trans Union objected to the topic

> on the grounds that it is overbroad and unlimited in time. FED. R. CIV. P.26(b)(1). This Topic seeks information beyond the scope of the claims and defenses in this case. Furthermore, this Topic does not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit. FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties. FED. R. CIV. P. 26(c). Trans Union objects to this Topic on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges. FED. R. EVID. 502.

Id.  Plaintiff argues that this topic is relevant to potential punitive damages and that Trans Union has failed to meet its burden of demonstrating how this topic is unduly burdensome or expensive.  MTC at 13.  Plaintiff notes there is a protective order in place which should alleviate Trans Union's objections regarding confidentiality or the proprietary nature of the information. Id. at 13-14. Finally, Plaintiff argues that Trans Union's objections based on privilege are unclear given that Trans Union has yet to produce a privilege log as required by Fed. R. Civ. P. 26(b)(5)(A).  Id. at 14.

Trans Union contends that it "does not track costs or expenses incurred in conducting each investigation" and that Mr. Montella testified that investigators are not paid for each dispute.  Oppo. at 13.  Trans Union further contends that Plaintiff has not shown that the Topic is relevant to Plaintiff's claim and that Plaintiff's questions should be directed towards Teleperformance f/k/a Intelenet Global Services Private Ltd., "a non-party, foreign entity [] vendor hired by Trans Union to process credit disputes."  Id.  Teleperformance is located in India and unaffiliated with Trans Union and the information Plaintiff seeks is within the custody and control of Teleperformance and not Trans Union as testified to by Mr. Montella.  Id.

24CV38-AJB(BLM)

Trans Union's objections to Topic 10 are **SUSTAINED IN PART and OVERRULED IN PART**. Mr. Montella testified that Trans Union uses a customer relations department located in Mumbai, India called Teleperformance f/k/a Intelenet. Tatar Decl. at Exh. 6 at 5. He further testified that Intelenet dispute agents are not paid per dispute and that Intelenet is its own entity separate from Trans Union. Id. at 8. When Plaintiff's counsel asked Mr. Montella if he was prepared to discuss Topic 10, "[c]osts or expenses incurred by TransUnion in conducting each investigation[,]" Mr. Montella responded "no." Tatar Decl. at Exh. 6, 19.

Trans Union is **ORDERED** to produce a 30(b)(6) witness to discuss the costs and expenses incurred by Trans Union to have Intelenet perform the relevant investigations. Given that (1) Trans Union and Mr. Montella have stated that Teleperformance/Intelenet is a separate entity that Trans Union uses to conduct investigations, (2) Mr. Montella testified that he did not know the inner workings of Intelenet, and (3) Trans Union has stated that Teleperformance and its employees have knowledge about the services provided by Teleperformance to Trans Union and that individual Teleperformance Operators processed the related dispute(s) received by Trans Union, the 30(b)(6) witness is not expected or required to testify as to the inner workings of Teleperformance[2]. Tatar Decl. at Exh. at 6, 19; see also Oppo. at 13, Singh Decl. at Exh. L (Trans Union's First Supplemental Rule 26(a)(1) Initial Disclosures). The 30(b)(6) witness is required to testify about the costs incurred by Trans Union to conduct or have conducted the relevant investigation, including for example, the amount of money paid by Trans Union to Teleperformance. Because Mr. Montella was not prepared to testify on this topic as to Trans Union's costs or expenses, Trans Union must prepare and produce a new 30(b)(6) witness.

///

///

---

[2] Including but not limited to the operating hours of Intelenet, how much the Intelenet agents are paid per hour, whether the agents are hourly, salaried, paid weekly or monthly, whether the agents receive incentives or bonuses to complete a certain number of disputes (except from Trans Union), number of dispute agents employed in India, number of supervisors employed in India, whether the dispute agents are employees or contractors, names of current employees of Intelenet, or disciplinary actions taken against Intelenet dispute agents or terminations.

24CV38-AJB(BLM)

2. <u>Topics 13-15</u>

Topic 13 is "[t]he names and contact information of all of the fraud and/or identity theft department manager(s), assistants, and other person(s) responsible for creating, reviewing, conducting training on, inspecting, and implementing the fraud and identity theft related policies and practices of Defendant." Singh Decl. at Exh. H. Topic 14 is "[t]he names and contact information of all of fraud and/or identity theft department manager(s), assistants, and other person(s) responsible for creating, reviewing, conducting training on, inspecting, and implementing the debtor identification and verification policies and practices of Defendant." <u>Id.</u> Topic 15 is "[t]he names and contact information of all of Defendant's employees and other person(s) who communicated with Plaintiff or anyone posing as Plaintiff, in writing, verbally, or otherwise, regarding the tradelines or accounts at issue." <u>Id.</u> Trans Union's objected to Topics 13-15

> on the grounds that [they are] overbroad and unlimited in time. FED. R. CIV. P.26(b)(1). Th[ese] Topic[s] seek[] information beyond the scope of the claims and defenses in this case. Furthermore, th[ese] Topic[s] do[] not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit. FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties. FED. R. CIV. P. 26(c). Trans Union objects to th[ese] Topic[s] on the grounds that the information sought is subject to the joint defense, work product, and attorney-client privileges. FED. R. EVID. 502.

<u>Id.</u> Plaintiff argues that these topics are relevant because the individuals may have information that speaks to whether dispute agents are properly trained to handle FCRA disputes and that Trans Union's overbroad objection is unfounded. MTC at 14. However, Plaintiff notes that she "is amenable to limiting the timeframe for these topics to 2018-2024." <u>Id.</u>

Trans Union contends that "Plaintiff's Motion fails to address the relevancy or necessity of contact information of individuals responsible for training on identity theft." Oppo. at 14. This is especially concerning here, where Plaintiff has not brought a negligent training claim. <u>Id.</u>

Trans Union produced written discovery on its policies and procedures surrounding consumer disputes and identity theft. <u>Id.</u> Mr. Montella also testified about Trans Union's training procedures specific to identity theft. <u>Id.</u> Plaintiff's counsel did not ask Mr. Montella for the contact information for individuals responsible for creating, implementing, and training on identity theft. <u>Id.</u>; <u>see</u> <u>also</u> Singh Decl. at ¶ 20. Trans Union notes that Plaintiff cites to Fed. R. Civ. P. 26(a)(i) for support which is "improper and meritless." Oppo. at 14.

Trans Union's objections to topics 13-14 are **SUSTAINED**. Topics 13 and 14 are overbroad as written. The topics contain no time frame, fraud encompasses many different types of interactions or situations that are not relevant to the instant dispute, and the group of individuals described in the topics is also overbroad. Even considering Plaintiff's willingness to limit the timeframe for these topics to 2018-2024, the Court finds the requests overbroad.

Trans Union's objections to Topic 15 are **SUSTAINED IN PART AND OVERRULED IN PART**. Topic 15 as written is overbroad and will be limited so as to only include Trans Union's employees and not "other person(s)." Accordingly, Trans Union must produce a 30(b)(6) witness prepared to testify about the "names and contact information of all of Defendant's employees [] who communicated with Plaintiff or anyone posing as Plaintiff, in writing, verbally, or otherwise, regarding the tradelines or accounts at issue" or provide the requested information in a declaration signed under penalty of perjury. If Trans Union wants to provide the requested information via declaration, it must provide the declaration to Plaintiff by **March 14, 2025**.

3. <u>Topics 16-17</u>

Topic 16 is "[a]ll of the oral and written training provided to employees of Defendant from 2017 through the present regarding Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding fraud/identity theft." Singh Decl. at Exh. H. Topic 17 is "[a]ll of the oral and written training provided to employees of Defendant from 2017 through the present regarding state and federal laws regarding credit reporting and fraud/identity theft." <u>Id.</u> Trans Union objects to Topics 16-17

> on the grounds that [they are] overbroad and unlimited in time. FED. R. CIV. P.26(b)(1). Th[ese] Topic[s] seek[] information beyond the scope of the claims

24CV38-AJB(BLM)

1  and defenses in this case. Furthermore, th[ese] Topic[s] do[] not identify the
2  subject matter with reasonable particularity and could involve many different
3  subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve,
4  review, and produce the information requested would impose undue burden
5  and expense on Trans Union, overwhelm Trans Union's resources, and far
6  outweigh any possible benefit. FED. R. CIV. P. 26(c)(1). Trans Union also
7  objects to providing information that constitutes confidential, proprietary, and
8  trade secret information of Trans Union and third parties. FED. R. CIV. P. 26(c).
9  Trans Union objects to th[ese] Topic[s] on the grounds that the information
   sought is subject to the joint defense, work product, and attorney-client
   privileges. FED. R. EVID. 502.

8  Id.  Plaintiff argues that Trans Union improperly objects to Topics 16-17 as the topics are highly

9  relevant to both Plaintiff's claims and Trans Union's affirmative defenses, specifically

10 "reasonableness and recklessness" and Plaintiff's claim that "Trans Union negligently and willfully

11 violated the Fair Credit Reporting Act and the California Credit Reporting Agencies Act."  MTC at

12 15.  Plaintiff notes that "Trans Union has put this topic at issue by asserting its policies and

13 procedures were adequate."  Id.

14     Trans Union contends that "Topic 16-17 are overly broad, not defined with reasonable

15 particularity, and beyond the scope of Plaintiff's claims and defenses."  Oppo. at 16.  Trans

16 Union notes that Mr. Montella testified about Trans Union's training procedures implemented on

17 identity theft but was asked questions about information outside of Trans Union's custody and

18 control with respect to the training of individuals employed by Teleperformance.  Id.  Trans

19 Union contends that this is something that could have been addressed with a meaningful meet

20 and confer.  Id.  Trans Union notes that it produced written discovery responses regarding

21 "Trans Union's training provided to its employees regarding fraud, identity theft and credit

22 reporting with respect to deposition topics 16 and 17" and that Plaintiff's counsel did not ask Mr.

23 Montella any questions regarding those documents.  Id.

24     Trans Union's objections to Topics 16-17 are **OVERRULED**.  Initially, the Court notes

25 that the language of Topics 16 and 17 is limited to Defendant's employees and, therefore, any

26 questions regarding Teleperformance f/k/a Intelenet are not permitted.  Second, the Court finds

27 that the requested time frame is overbroad.  The Court limits the time frame for Topics 16 and

28 17 to January 2019 (the year Plaintiff alleges that fraudulent activity began [see ECF No. 1 at 5;

24CV38-AJB(BLM)

see also Tatar Decl. at Exh 6 at 18]) through December 2023 (days before this lawsuit was filed).   Finally, the Court notes that while Mr. Montella testified about his own training experiences, he was not able to testify consistently as a corporate representative.   The exchanges with Plaintiff's counsel during the deposition regarding identity theft and training included the following:

> Q· · Can you tell me how -- in what ways is TransUnion generally speaking -- in what ways does TransUnion get notified that a consumer believes he or she is a victim of identity theft?  · A·  Well, that would come from the consumer. The consumer would initiate something either via a telephone call.· If they still wish to send us mail, they have the opportunity to do that. Or they can dispute online. They will be the ones to tell us, I believe there was fraud.
>
> Q· · Okay.· Will TransUnion only receive carbon copies where another credit reporting agency believes a tradeline is affected by identity theft? · A· · No. MS.



24CV38-AJB(BLM)



out. Now what happens after that fact, I don't know. Because I don't know anybody who's not completed those trainings.

Q· · Do the dispute agents get training in how to or what the different types of identity thefts are? · A· · Yes.

Q· · How often do they receive that type of training? · A· · That I don't know.

Q· · Who would have that information. · A· · Consumer relations.

24CV38-AJB(BLM)



Tatar Decl. at Exh. 6.  Mr. Montella's limited capabilities to testify as a 30(b)(6) witness on these topics are underscored by the fact that he testified that he was not prepared to discuss Topics 16 and 17.  Tatar Decl. at Exh. 6 at 19.  Accordingly, Defendant must provide a new 30(b)(6) witness to testify about Topics 16 and 17.

    4.  <u>Topics 23-26</u>

       Topic 23 is "[a]ny and all complaints and allegations, including, but not limited to, lawsuits, demand letters, Better Business Bureau, State Licensing Agency, Yelp! reviews, Google reviews, any online review forum against Defendant for violation of credit reporting laws and/or fraud and identity theft laws in the preceding 36 months."  Singh Decl. at Exh. H.  Topic 24 is "[a]ll lawsuits instituted against You based on alleged violations of the CCRAA Cal. Civ. Code §1785 et seq., and Fair Credit Reporting Act 15 U.S.C. §1681 during the 5 years prior to the filing of the Complaint."  <u>Id.</u>  Topic 25 is "[a]ll studies, audits, quality control analyses, or other investigations that You conducted regarding the frequency of identity theft disputes over the previous 5 years."  <u>Id.</u>  Topic 26 is "[a]ll studies, audits, quality control analyses, or other investigations that You conducted regarding the frequency of identity theft disputes involving Wells Fargo, N.A. over the previous 5 years.  <u>Id.</u>  Trans Union objects to Topics 23-26

        on the grounds that [they are] overbroad and unlimited in time. FED. R. CIV. P.26(b)(1). Th[ese] Topic[s] seek[] information beyond the scope of the claims and defenses in this case. Furthermore, th[ese] Topic[s] do[] not identify the subject matter with reasonable particularity and could involve many different subject matters. FED. R. CIV. P. 30. Moreover, requiring Trans Union to retrieve, review, and produce the information requested would impose undue burden and expense on Trans Union, overwhelm Trans Union's resources, and far outweigh any possible benefit. FED. R. CIV. P. 26(c)(1). Trans Union also objects to providing information that constitutes confidential, proprietary, and trade secret information of Trans Union and third parties. FED. R. CIV. P. 26(c). Trans Union objects to th[ese] Topic[s] on the grounds that the information

24CV38-AJB(BLM)

1  sought is subject to the joint defense, work product, and attorney-client
2  privileges. FED. R. EVID. 502.

3  Id. Plaintiff argues that Trans Union has been ordered to produce this information in other cases
4  and that the information is relevant to Plaintiff's "§1681i reinvestigation claim and willfulness."
5  MTC at 15.  Plaintiff notes that Trans Union's knowledge of other lawsuits shows that Trans
6  Union knew Wells Fargo was not a reliable source of information and that Trans Union acted
7  recklessly in its investigation.  Id. at 16.  Plaintiff further argues that these objections are not
8  supported by evidence specifying the undue burden or expense Trans Union claims.  Id. at 16-
9  17.

10  Trans Union contends that Plaintiff is relying on Fed. R. Civ. P. 26 for her position which
11  is specific to written discovery, not 30(b)(6) deposition topics. Oppo. at 17.  Trans Union further
12  contends that the topics are overbroad and "should not be discoverable as each lawsuit is unique
13  in that they all are based on their own set of facts and circumstances." Id. at 18.  Trans Union
14  contends the topics are overbroad as to scope and time.  Id.  Additionally, much of the
15  information Plaintiff is seeking in Topic 23 is publicly available and not proportional to the needs
16  of the case. Id. at 19.

17  Trans Union's objections to Topic 23 are **SUSTAINED**.  Topic 23 is overbroad and seeks
18  irrelevant or minimally relevant information (such as allegations in online review forums) that is
19  not proportional to the needs of this case.

20  Trans Union's objections to Topic 24 are **OVERRULED**, however, Topic 24 is limited to
21  the time period between January 2019 and December 2023.  Topic 24 is also limited to lawsuits
22  served on Trans Union. Accordingly, Trans Union must produce a 30(b)(6) witness prepared to
23  testify about all lawsuits served on You against You based on alleged violations of the CCRAA
24  Cal. Civ. Code §1785 et seq., and Fair Credit Reporting Act 15 U.S.C. §1681 from January 2019
25  through December 2023 or provide the requested information in a declaration signed under
26  penalty of perjury.  If Trans Union wants to provide the information by declaration, it must
27  provide the declaration to Plaintiff by **March 14, 2025**.

28

24CV38-AJB(BLM)

Trans Union's objections to Topics 25 and 26 are **SUSTAINED**.  The requests as written are overbroad and not proportional to the claims in this case.  This is not a class action case; it is an individual claim.  The requests seek a broad array of types of studies or investigations and are focused on "frequency" of disputes, rather than focusing on facts of this case.  The requests are not proportional because they seek to obtain information about studies, audits, analyses and investigations rather than, for example, the number of identity theft disputes (similar to Topic 24 which seeks number and identity of lawsuits).  Also, while Plaintiff's brief explains why the lawsuits are relevant, she does not explain why the array of studies, audits, analyses and investigations are relevant.

**Protective Order**

Trans Union seeks a protective order pursuant to Fed. R. Civ. P. 26(c) with respect to deposition Topics  10, 13-17, and 23-26.  Oppo. at 22.  Trans Union contends that the deposition topics are "improper attempts to shoehorn interrogatories and requests for production into a deposition" and "beyond the scope of the claims and defenses in this case and do not identify the subject matter."  Id. at 23.  Trans Union requests that Plaintiff's motion be denied, and it not be required to produce a second 30(b)(6) witness.  Id.

Plaintiff argues that Trans Union's  failure to seek a protective order previously cannot be rectified.  MTC at 12.  For the Court to grant a protective order, Trans Union would have to demonstrate excusable neglect since the time proper for requesting a protective order has passed, and Trans Union is unable to do so.  Id.

Fed. R. Civ. P. 26(c)(1) allows a party to "move for a protective order . . . . on matters relating to a deposition, in the court for the district where the deposition will be taken."  Where good cause is shown, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Id.  If the motion for a protective order is denied in whole or part, the court may order that the discovery be provided.  Fed. R. Civ. P. 26(c)(2).

In reviewing Trans Union's objections to the various deposition topics, the Court has considered Trans Union's request for a protective order.  While the Court understands Plaintiff's

24CV38-AJB(BLM)

position, the Court does not find that request to be untimely because Trans Union appeared for the January 8, 2025 deposition and is now seeking a protective order to prevent a continuation of that 30(b)(6) deposition. In accordance with the discussion above, Trans Union's request for a protective order is **GRANTED** as to Topics 13, 14, 23, 25, and 26.

### Failure to Appear & Sanctions

Plaintiff argues that Trans Union's inadequate preparation of its 30(b)(6) witness constitutes a failure to appear. MTC. at 17. Mr. Montella was unable to answer numerous questions for which he was the designated witness. Id. Mr. Montella responded "I don't know" to several questions related to Topics 1-2 and 6-9 which covered the factual basis for Trans Union's affirmative defenses, Trans Union's policies, procedures, methods, techniques and rules regarding investigations, Trans Union's communications regarding the Wells Fargo accounts, and Trans Union's investigation into Plaintiff's disputes. Id. at 17-21; see also Tatar Decl. at Exh. 6. Considering Trans Union's unprepared 30(b)(6) deponent and boilerplate objections, Plaintiff argues that Trans Union cannot justify its behavior and that she should be permitted to file a motion for sanctions if her motion to compel is granted. MTC at 21. Specifically, Trans Union's behavior has increased costs and delayed discovery and warrants compelled testimony and monetary sanctions. Id.

Trans Union contends that Plaintiff is not entitled to sanctions given that Plaintiff failed to meet and confer, Plaintiff waited until the end of the discovery period to conduct the 30(b)(6) deposition, Plaintiff sought to amend the scheduling order for a second deposition on an *ex parte* basis, Trans Union did not act improperly, Trans Union produced a 30(b)(6) witness who was adequately prepared and deposed for six hours despite Trans Union's written objections, and Plaintiff's counsel failed to meet and confer prior to the deposition despite knowing that Trans Union objected to some of the noticed topics. Oppo. at 20-21. Trans Union further contends that it is entitled to recover attorney's fees if the Court denies Plaintiff's motion as Plaintiff's motion and request for sanctions "is an attempt to mislead the Court as to Plaintiff's claims and the deposition testimony provided by Mr. Montella" and "a tactic designed to gain settlement advantage and exploit the discovery process, all while failing to meaningfully meet

24CV38-AJB(BLM)

1  and confer prior to filing the Motion." Oppo. at 20-22.

2        If a motion to compel discovery is granted, Fed. R. Civ. P. 37(a)(5)(A) requires a court to

3  order the "party or deponent whose conduct necessitated the motion, the party or attorney

4  advising that conduct, or both to pay the movant's reasonable expenses incurred in making the

5  motion, including attorney's fees" unless the movant failed to meet and confer, the objection

6  was substantially justified, or other circumstances militate against awarding expenses. See

7  Brown v. Hain Celestial Group, Inc., 2013 WL 5800566, *5 (N.D. Cal. Oct. 28, 2013) ("[t]he

8  party that loses the motion to compel bears the affirmative burden of demonstrating that its

9  position was substantially justified") (internal citations omitted). If a motion to compel is denied,

10  the court must, after giving an opportunity to be heard, require the movant, the attorney filing

11  the motion, or both to pay the party or deponent who opposed the motion its reasonable

12  expenses incurred in opposing the motion, including attorney's fees unless the motion was

13  substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ.

14  P. 37(a)(5)(B). If a motion to compel discovery is granted in part and denied in part, the court

15  may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity

16  to be heard, apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C).

17        Fed. R. Civ. P. 30(d)(2) provides that a court "may impose an appropriate sanction -

18  including the reasonable expenses and attorney's fees incurred by any party - on a person who

19  impedes, delays, or frustrates the fair examination of the deponent." Bicek v. C & S Wholesale

20  Grocers, Inc., 2013 WL 5673418, *6-8 (E.D. Cal. Oct. 17, 2013) (finding sanctions appropriate

21  under both Rules 30 and 37 as a result of counsel's delaying, impeding and frustrating

22  depositions, and for causing opposing counsel to seek the court's intervention to resolve the

23  dispute). "To determine if sanctions are warranted under Rule 30, the court's inquiry is twofold.

24  First, the court must determine whether a person's behavior has impeded, delayed, or frustrated

25  the fair examination of the deponent." Lucas v. Breg, Inc., 2016 WL 2996843, at *2 (S.D. Cal.

26  May 13, 2016) (quoting Dunn v. Wal-Mart Stores, Inc., 2013 WL 5940099 (D. Nev. Nov. 1,

27  2013), citing Fed. R. Civ. P. 30(d)(2)). Second, the Court must determine an appropriate

28  sanction. Id. "The Ninth Circuit provides District Courts with wide discretion to fashion

24CV38-AJB(BLM)

appropriate sanctions for discovery violations under the Federal Rules." <u>Brady v. Grendene USA, Inc.</u>, 2015 WL 5177760, at *2 (S.D. Cal. Sept. 4, 2015) (citing <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001)).

Both Plaintiff and Trans Union's request to file a motion for sanctions is **DENIED**. Plaintiff's motion is being granted in part and denied in part and both parties have taken actions making the motion and the opposition substantially justified and such that an award of sanctions would be unjust.

Plaintiff also seeks an order requiring Trans Union to designate and prepare a witness to testify on Topics 1-2, 6-7, and 9. MTC at 18-21. Topic No. 1 addresses "[t]he factual basis of each affirmative defenses that You pled as to Plaintiff's claims." Singh Decl. at Exh. H. Trans Union's affirmative defenses include compliance with its reasonable policies and procedures, compliance with the FRCA and the CCRAA, the statute of limitations, failure to act with negligence, malice, or willful intent to injure, and Plaintiff's failure to mitigate damages. ECF No. 8 at 14-15. Plaintiff cites to several excerpts from the deposition transcript in support of her position that Mr. Montella was unprepared to answer questions related to Topic 1 [<u>see</u> MTC at 19] including the following:

> Q · · How does TransUnion ensure that a dispute agent has actually reviewed all of the documents that a consumer sends over? A · · Besides QA, as far as, I mean, I don't believe, again, I don't know because I don't know if they're counting keystrokes or watching somebody's screens, but it comes out in QA.

Tatar Decl. at Exh. 6 at 11.

24CV38-AJB(BLM)



Tatar Decl. at Exh. 6 at 13.

    Q· · Okay. Do the dispute agents get training on how to detect forgeries?  A· · Not to my knowledge.

    Q· · Do the dispute agents get training in how to or what the different types of identity thefts are?  A· · Yes.

    Q· · How often do they receive that type of training?  A· · That I don't know

    Q· · Who would have that information.  A· · Consumer relations.

Tatar Decl. at Exh. 6 at 18.

    Q· · Who would have that information?  A· · Well, we'll start going deep. So each company is assigned a, I guess, we're going to call it sales rep and an analyst. I don't know who Wells was assigned but that's where I would start to see if they were asked to ever improve anything on their end.

    Q· · Okay. How many times has the plaintiff been sued, do you know?  A· · No, I have no idea.

    Q· · Do you know how many times or if the plaintiff has been accused of a crime involving dishonesty?  A· · No, I have no idea.

    Q· · What's the average caseload per dispute agent, do you know?  A· · No. No idea.

24CV38-AJB(BLM)

Tatar Decl. at Exh. 6 at 17.

Tatar Decl. at Exh. 6 at 8.

Tatar Decl. at Exh. 6 at 7.

24CV38-AJB(BLM)



Tatar Decl. at Exh. 6 at 14.



Tatar Decl. at Exh. 6 at 15.



Tatar Decl. at Exh. 6 at 16-17.  The Court finds that Mr. Montella was unable to adequately respond to several questions related to Topic 1.  Accordingly, Plaintiff's request for a new 30(b)(6) witness to respond to Topic 1 is **GRANTED**.

Topic No. 2 addresses "[a]ll of Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding investigating tradelines when a consumer claims the tradeline is the result of identity theft."  Singh Decl. at Exh. H.  Topic 2 is similar to Topics 16-17 ("[a]ll of the oral and written training provided to employees of Defendant from 2017 through the present regarding Defendant's policies, procedures, methods, techniques, tactics, rules, and regulations regarding fraud/identity theft" and "[a]ll of the oral and written training provided to

24CV38-AJB(BLM)

employees of Defendant from 2017 through the present regarding state and federal laws regarding credit reporting and fraud/identity theft.") and when discussing Topic 2, Plaintiff cites to the same portions of the deposition that were discussed above. See supra at 11-12.  The Court has already found that Mr. Montella failed to adequately prepare for his testimony on Topics 16-17 and that Trans Union must provide a new 30(b)(6) witness for those topics.  Id. Accordingly, Plaintiff's request for a new 30(b)(6) witness to respond to Topic 2 is **GRANTED**. As with Topics 16-17, the witness is required to answer questions about Trans Union; and questions regarding the internal policies and procedures of Teleperformance f/k/a Intelenet are not permitted.

Topic No. 6 addresses "[a]ll communications, written, verbal, or otherwise between Defendant and its staff regarding the tradelines at issue Defendant was reporting or publishing about Plaintiff, including all internal notes, records, and communications."  Singh Decl. at Exh. H.  Topic No. 7 addresses "[a]ll communications, written, verbal, or otherwise, internally within Defendant regarding the investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case."  Id.  Plaintiff highlights two instances from a six-hour deposition where Mr. Montella did not respond thoroughly to Topics 6-7.  MTC. at 20 (citing Depo Transcript at 49:19-50:4) and (103:5-12).  In the first instance, Plaintiff's counsel asked:

> Q· · Okay.· Since Plaintiff's filing of the lawsuit, has TransUnion blocked the two Wells Fargo accounts from her credit reports?  A· · They are currently not on the file.
>
> Q· · Were they suppressed?  A· · They were suppressed.
>
> Q· · Why were they suppressed?  A· · I don't recall off the top of my head. But they are no longer on file. I apologize for my faulty memory, but I know they are no longer there, but they were suppressed.

Tatar Decl. at Exh. 6 at 3-4.  Plaintiff's counsel asked follow-up questions and Mr. Montella responded and testified that (1) the accounts will not "pop back up on" Plaintiff's credit report if she loses the instant matter, (2) the decision to suppress the Wells Fargo accounts was a business decision by Trans Union, not Wells Fargo, (3) if it had been a decision by Wells Fargo,

24CV38-AJB(BLM)

Mr. Montella would have expected "to see an AUD or some sort of update transmitted or communicated from Wells Fargo to TransUnion[,]" (4) "to the best of [his] knowledge, and forgive me if I am wrong, [Wells Fargo] never told us to remove it[,]" and (5) Wells Fargo answered the ACDV and updated it in such a way that it passed Trans Union's system." Id. In the second instance, Plaintiff's counsel asked:

Tatar Decl. at Exh. 6 at 16.  Mr. Montella then responded to Plaintiff's counsel's follow-up questions regarding the ACVD and Wells Fargo by testifying that (1) to his knowledge, Trans Union does not ask its furnishers what they do to investigate the ACDVs that it sends to Trans Union, (2) that he could only speak for himself personally with respect to whether Trans Union audits ACDV responded from its furnishers, (3) he did not know what Wells Fargo does during their investigation process, and (4) he was unaware of the number of lawsuits filed against Wells Fargo where the plaintiff accused Wells Fargo of reporting inaccurate information due to identity theft.  Id.  In addition, unlike some of the other topics, Mr. Montella testified that he was prepared and ready to testify on Topics 6 and 7.  Tatar Decl. at Exh. 6 at 19 ("Q· · Okay. Number 6, communications, et cetera, regarding the tradelines at issue that Defendant was reporting, including internal notes, records and communications? A· · Yes. Q· · Number 7, communications regarding investigations into disputes received by the defendant from the plaintiff or from a credit reporting agency? A· · Yes.").

Plaintiff's request for a new 30(b)(6) witness to respond to Topics 6-7 is **DENIED**.  While Mr. Montella was unable to answer whether Plaintiff's dispute was reviewed by a human being, he responded that the review did occur and answered Plaintiff's counsel's follow-up questions. Id. at Exh. 6 at 16.  Additionally, the Court understands that Plaintiff may use Trans Union's lack of knowledge regarding Wells Fargo's investigation process, or the number of lawsuits filed against Wells Fargo to try and support her position that Trans Union did not know that Wells

24CV38-AJB(BLM)

Fargo conducted its investigation reasonably and should not have relied on Wells Fargo, however, Mr. Montella's inability to answer questions about the internal procedures at Wells Fargo and the number of lawsuits filed against Wells Fargo is not support for the position that Mr. Montella was unprepared to testify about Topics 6 and 7 which concerned Trans Union's communications regarding Plaintiff's Wells Fargo accounts.

Topic No. 9 addresses "[a]ll information regarding Defendant's investigation(s) into dispute(s) received by Defendant from Plaintiff or from a CRA regarding the account(s) at issue in this case." Singh Decl. at Exh H. Plaintiff argues that Topic 9 is "at the very heart of Plaintiff's FCRA and CCRAA claims" and that Mr. Montella was unprepared to testify on the topic. MTC at 21. Trans Union does not address Topic 9. Oppo.

Initially, Plaintiff cites to a portion of the deposition transcript regarding questions related to dispute agents employed by Intelenet. MTC at 21 (citing Tatar Decl. at Exh. 6 at 76:20-25; 77:16-19; 77:6-15; 77:20-25). As the Court has already explained, Trans Union's 30(b)(6) witness is not expected or required to testify as to the inner workings of Teleperformance/Intelenet. Supra at 8-9. Plaintiff next cites to the same testimony she cited regarding Topics 6 -7 about whether Plaintiff's dispute was sent to a human being for review. MTC at 20-21. Finally, Plaintiff refers to the following excerpts of testimony as examples of Mr. Montella's lack of preparation for the deposition:



24CV38-AJB(BLM)

Tatar Decl. at Exh. 6 at 13-14.

> Q· · Okay. Going back to what you said earlier, what were the dates that you were asked to look at with respect to the plaintiff's disputes? A· · From the period of December, 2020 on. I believe that's correct.

> Q· · Are you aware that there were fraudulent -- allegedly fraudulent charges made to the plaintiff's credit card in 2019?   A· · That wasn't part of my investigation because I did not go back beyond 2020.

> Q· · Okay.· Is there a particular reason you didn't go back before 2020? A· · Yeah, the nature of the investigation didn't tell me to do that.· So what I gleaned and from what I read, there was no indication that there was anything an issue.· So I did not go back beyond that.

> Q· · When you say nature of investigation, do you mean the -- your preparation for today or -- A· · Yeah.· The gathering of the documents and things like that.

> Q· · Right.· Did you review Plaintiff's complaint prior to today's deposition? A· · Yeah, I went through everything.

> Q· · Okay.· And Plaintiff's complaint references that charges began in August of 2019.· Given that, that's an allegation in her complaint, did that not strike you as odd that you didn't go back before 2020? A· · No, because everything that was done from that point forward was disputed the same way with the fraud claim code.· So it was the continuation at that point, and every time that Wells responded, they told us not to delete it.· So I felt there was sufficient information just to go by with what I had --· I had ·seen up at that point.

> Q· · Okay.· So as you sit here today, you don't know whether or not Plaintiff called prior to December of 2020? A· · Correct.

Id. at Exh. 6 at 18.

> Q· · Do you know what gave rise to this fraud referral? A· · I don't, only for the fact I started in December of 2020.· It was outside the scope of my investigation.

Tatar Decl. at Exh. 6 at 21.  These excerpts indicate that contrary to Mr. Montella's testimony

24CV38-AJB(BLM)

that he was prepared to testify on Topic 9 [id. at 19], he was not.  Mr. Montella admitted that he did not review anything prior to December 2020 despite Plaintiff's allegations of fraud dating back to August 2019 and that despite having the ability to do so, he chose not to investigate which specific documents Trans Union sent to Wells Fargo regarding Plaintiff's dispute.  Id. at 13.  This testimony and Trans Union's failure to address Topic 9 support a finding that Mr. Montella was not adequately prepared to testify regarding Topic 9.  Accordingly, Plaintiff's request for a new 30(b)(6) witness to respond to Topic 9 is **DENIED IN PART AND GRANTED IN PART**. Trans Union must produce a 30(b)(6) witness prepared to testify about Topic 9. However, the deponent is not expected or required to testify as to Teleperformance/Intelenet.

## **CONCLUSION**

Plaintiff's Motion to Compel Deposition of Defendant Trans Union is **GRANTED IN PART AND DENIED IN PART** as follows:

Trans Union must produce a 30(b)(6) witness on Topics 1, 2, 9, 10, 15, 16, 17, and 24 as amended or limited by the Court.  The deposition time will be limited to four hours. The deposition must take place by **March 24, 2025**.

If Trans Union prefers, it may provide a declaration signed under penalty of perjury in place of providing a 30(b)(6) deponent for Topics 15 and 24.  Trans Union must produce the declaration(s) signed under penalty of perjury by **March 14, 2025**.

Trans Union does not have to produce a 30(b)(6) deponent or declaration for Topics 6, 7, 13, 14, 23, 25, or 26.

**IT IS SO ORDERED.**

Dated:  2/27/2025

Hon. Barbara L. Major
United States Magistrate Judge

28

24CV38-AJB(BLM)